# 26-1246

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

WILLIE MADDIX,

*Plaintiff-Appellant,*

v.

CITY OF NEW YORK, MARRIOTT HOTEL SERVICES, INC.,
MARRIOTT INTERNATIONAL, INC., D/B/A JW MARRIOTT ESSEX HOUSE HOTEL,

*Defendants-Appellees,*

KYLE REEVES,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

BRIEF FOR *AMICUS CURIAE* NATIONAL ASSOCIATION OF CRIMINAL
DEFENSE LAWYERS IN SUPPORT OF
PLAINTIFF-APPELLANT WILLIE MADDIX AND REVERSAL

PARTHA SHARMA*
LAW OFFICES OF
  JOEL B. RUDIN, P.C.
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
psharma@rudinlaw.com

*\* Application for admission pending*

JOEL B. RUDIN
VICE-CHAIR, *AMICUS* COMMITTEE
NATIONAL ASSOCIATION OF CRIMINAL
  DEFENSE LAWYERS
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
jbrudin@rudinlaw.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A), counsel for *amicus curiae* the National Association of Criminal Defense Lawyers ("NACDL") certify that NACDL is not owned by a parent corporation, and that no publicly held corporation owns ten percent or more of stock in NACDL.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...............................................i

TABLE OF CONTENTS ...................................................................ii

TABLE OF AUTHORITIES................................................................ iii

STATEMENT OF INTEREST ..............................................................1

INTRODUCTION..........................................................................3

ARGUMENT ...............................................................................7

    A.    Section 1983 *Brady* claims are important to holding law enforcement accountable for, and deterring future violations of, a constitutional obligation that is inherently difficult to enforce .................................................................7

    B.    The touchstone of *Brady* materiality is a reasonable probability of a more favorable outcome, not proof of fabrication, as the District Court's decision mistakenly holds .................................................................10

CONCLUSION .............................................................................17

# TABLE OF AUTHORITIES

## Cases

*Bellamy v. City of New York*,
914 F.3d 727 (2d Cir. 2019).....................................................14, 15

*Giglio v. United States*,
405 U.S. 150 (1972) ......................................................................12

*Hill v. City of New York*,
45 F.3d 653 (2d Cir. 1995)..............................................................8

*Imbler v. Pachtman*,
424 U.S. 409 (1976) ........................................................................8

*Kyles v. Whitley*,
514 U.S. 419 (1995) .......................................................4, 9, 12, 15

*Maddix v. City of New York*,
2026 WL 948287 (E.D.N.Y. Apr. 8, 2026)......................................11

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978) ........................................................................7

*Owen v. City of Independence*,
445 U.S. 622 (1980) ........................................................................7

*Poventud v. City of New York*,
750 F.3d 121 (2d Cir. 2014) (en banc)...................................*passim*

*United States v. Bagley*,
473 U.S. 667 (1985) .....................................................................4, 5

*United States v. Olsen*,
737 F.3d 625 (9th Cir. 2013) ...........................................................8

*Van de Kamp v. Goldstein*,
555 U.S. 335 (2009) ........................................................................8

## Other Authorities

Daniel J. Capra, *Access to Exculpatory Evidence: Avoiding the* Agurs *Problems of Prosecutorial Discretion and Retrospective Review*, 53 Fordham L. Rev. 391 (1984)...........................................................5

Daniel S. Medwed, Brady*'s Bunch of Flaws*, 67 Wash. & Lee L. Rev. 1533 (2010) ...............................................................................9

David Keenan et al., *The Myth of Prosecutorial Accountability After* Connick v. Thompson*: Why Existing Professional Responsibility Measures Cannot Protect Against Prosecutorial Misconduct*, 121 Yale L.J. Online 203 (2011)...........................................................9

Joel B. Rudin, *The Supreme Court Assumes Errant Prosecutors Will Be Disciplined by Their Offices or the Bar: Three Case Studies that Prove that Assumption Wrong*, 80 Fordham L. Rev. 537 (2011)8, 10

Miriam H. Baer, *Timing Brady*, 115 Colum. L. Rev. 1 (2015) .................9

N.Y. State Bar Ass'n, *Report of the Task Force on Criminal Discovery* (2015), available at https://bit.ly/4eXHxRp (last visited July 13, 2026) ......................................................................................10

Samuel R. Gross et al., *Government Misconduct and Convicting the Innocent: The Role of Prosecutors, Police and Other Law Enforcement* (Nat'l Registry of Exonerations, Sept. 1, 2020), available at https://bit.ly/3Romxu3 (last visited July 13, 2026) .....8

## STATEMENT OF INTEREST

The National Association of Criminal Defense Lawyers ("NACDL") comprises thousands of advocates across the United States who are committed to protecting the rights of persons accused of crimes.[1] It is a nonprofit voluntary professional bar association that works on behalf of criminal defense attorneys to ensure justice and due process for those accused of crimes or misconduct. NACDL was founded in 1958. Its members include private criminal defense lawyers, public defenders, military defense counsel, law professors, and judges. NACDL is the only nationwide professional bar association for public defenders and private criminal defense lawyers. NACDL files numerous *amicus* briefs each year in the U.S. Supreme Court and other federal and state courts in cases that present issues of broad importance to criminal defendants, criminal defense lawyers, and the criminal justice system as a whole.

NACDL urges this Court to reverse the unprecedented decision of the district court in this case that the suppression of impeachment

---

[1] No party or its counsel authored this brief in whole or part. Neither a party or its counsel nor any other person contributed money to fund its preparation or submission. All parties to this appeal consent to the filing of this brief, and its filing is therefore authorized by Federal Rule of Appellate Procedure 29(a)(2).

evidence does not give rise to a constitutional claim under *Brady v. Maryland*, 373 U.S. 83 (1963), unless the testimony of the affected witness was objectively false. Such a rule would profoundly change existing law and frustrate *Brady*'s purpose of ensuring fair trials, by making it more difficult for criminal defense attorneys to adequately defend their clients and increasing the likelihood of wrongful convictions.

## INTRODUCTION

The District Court's holding below is plainly and bizarrely wrong. Every Supreme Court and Second Circuit precedent holds that *Brady* has three elements—suppression, favorability, and materiality—and none of them require that the evidence prove that a witness's testimony is false. If allowed to stand, the District Court's ruling would undermine the enforcement of *Brady* in two important ways.

First, it would greatly limit the viability of Section 1983 lawsuits where a *Brady* violation has occurred, narrowing the most effective means for holding police officers and prosecutors accountable for suppressing defense-favorable evidence, obtaining compensation for their victims, and deterring future transgressions.

Second, it would muddle well-established *Brady* doctrine by ignoring that the touchstone of *Brady* materiality is a reasonable probability of a different result, not establishing that the testimony that the suppressed evidence would tend to discredit was actually false. The burden of proof in our system always is on the prosecution, to establish guilt beyond a reasonable doubt—the defense need prove nothing. It is

3

in relation to that burden of proof standard that *Brady* has always been understood.

Evidence favorable to the defense is material under *Brady* if its disclosure would create a reasonable probability of a more favorable outcome, which essentially means a reasonable doubt in the minds of one or more jurors. "A defendant's right to pre-trial disclosure under *Brady* is not conditioned on his ability to demonstrate that he would or even probably would prevail at trial if the evidence were disclosed." *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (en banc) (cleaned up). As the Supreme Court has repeatedly stated, non-disclosure of favorable evidence is material if it "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citing *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

The District Court's new requirement—that impeachment evidence not only undermine confidence in a witness's testimony (and in the trial's outcome) but establish that the testimony was false—would turn the burden of proof at a criminal trial on its head. A criminal defendant heretofore has had no burden to establish that the prosecution's case is false; instead, the defendant must be acquitted if

4

the prosecution's case leaves a reasonable doubt about the charge's truth. Because the lower court's ruling would for the first time require a criminal defendant to establish the falsity of testimony to make out a *Brady* violation, NACDL urges this Court to emphatically overturn it. The Court should clearly instruct that *Brady* claims, including those advanced under Section 1983, have no such element.

*Brady* is intended "to ensure that a miscarriage of justice does not occur." *Bagley*, 473 U.S. at 675. The *Brady* rule furthers the truth-seeking function of a criminal trial by requiring the government to disclose, and enabling the defense to use, evidence favorable to the defendant that the defense likely does not have. "This unequal access is caused by a number of factors ranging from a differential in resources to the timing of investigations. The disparity in access to exculpatory evidence is even greater when the defendant is indigent." Daniel J. Capra, *Access to Exculpatory Evidence: Avoiding the* Agurs *Problems of Prosecutorial Discretion and Retrospective Review*, 53 Fordham L. Rev. 391, 391 (1984) (cleaned up). Without the robust enforcement of *Brady* obligations, criminal defense attorneys cannot effectively represent

their clients against an adversary that, in almost all cases, possesses vastly greater investigative power and resources.

Section 1983 lawsuits for constitutional violations, including violations of *Brady*, serve several purposes. One, of course, is to enable aggrieved individuals who have spent many years in prison to recover compensatory damages. A second is to use the civil discovery process to bring to light unlawful government policies and practices so that they may be redressed. A third is to deter government officials from similarly victimizing others in the future. All these functions would be thwarted if the District Court's unprecedented ruling dismissing Plaintiff-Appellant Willie Maddix's lawsuit were upheld on appeal.

6

# ARGUMENT

**A. Section 1983 *Brady* claims are important to holding law enforcement accountable for, and deterring future violations of, a constitutional obligation that is inherently difficult to enforce**

Congress enacted Section 1983 to "serve as a deterrent against future constitutional deprivations." *Owen v. City of Independence*, 445 U.S. 622, 651 (1980). Claims like Maddix's, which seek to hold municipalities liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), serve a particularly important deterrent role, by incentivizing municipal policymakers to adopt policies and procedures that minimize the likelihood of constitutional violations. *See Owen*, 445 U.S. at 652.

Perhaps nowhere is Section 1983's deterrent role more important than in lawsuits raising *Brady* claims against municipalities for their prosecutors' conduct. The suppression of favorable evidence is a significant cause of wrongful convictions: such evidence was concealed in 44 percent of the first 2,400 exoneration cases contained in the National Registry of Exonerations, including 61 percent of murder exoneration cases. Samuel R. Gross et al., *Government Misconduct and Convicting the Innocent: The Role of Prosecutors, Police and Other Law Enforcement* 32 (Nat'l Registry of Exonerations, Sept. 1, 2020),

available at https://bit.ly/3Romxu3 (last visited July 13, 2026). As noted by a 2013 opinion joined by four other circuit judges, "*Brady* violations have reached epidemic proportions in recent years, and the federal and state reporters bear testament to this unsettling trend." *United States v. Olsen*, 737 F.3d 625, 631 (9th Cir. 2013) (Kozinski, J., dissenting from denial of rehearing en banc) (collecting cases).

Where a prosecutor violates the *Brady* obligation and deprives a criminal defendant of his liberty, a *Monell* claim is the only opportunity for the defendant to obtain compensation and hold the government accountable. Individual prosecutors enjoy absolute immunity for all trial functions, including *Brady* compliance. *See Hill v. City of New York*, 45 F.3d 653, 662 (2d Cir. 1995) (citing *Imbler v. Pachtman*, 424 U.S. 409, 416 (1976)). Supervisory prosecutors also are immune. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009). Even where prosecutors are found to have committed misconduct, professional responsibility mechanisms fail to police them. *See* Joel B. Rudin, *The Supreme Court Assumes Errant Prosecutors Will Be Disciplined by Their Offices or the Bar: Three Case Studies that Prove that Assumption Wrong*, 80 Fordham L. Rev. 537 (2011); David Keenan et al., *The Myth*

*of Prosecutorial Accountability After* Connick v. Thompson*: Why Existing Professional Responsibility Measures Cannot Protect Against Prosecutorial Misconduct*, 121 Yale L.J. Online 203 (2011).

Civil liability is particularly crucial to the enforcement of *Brady* because, unlike certain other fair trial violations, courts cannot police them in real time—suppressed evidence by definition is hidden from judges and the defense. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("the prosecution . . . alone can know what is undisclosed"). Cases like this one, in which *Brady* violations are fortuitously revealed, likely constitute a mere fraction of the total number of cases in which prosecutors have suppressed evidence. Daniel S. Medwed, Brady*'s Bunch of Flaws*, 67 Wash. & Lee L. Rev. 1533, 1540 (2010) ("proven *Brady* errors hint at a larger problem because the vast majority of suspect disclosure choices occur in the inner sanctuaries of prosecutorial offices and never see the light of day"); Miriam H. Baer, *Timing Brady*, 115 Colum. L. Rev. 1, 32–43 (2015) (discussing significant incentives for prosecutors to withhold evidence). Civil discovery in such cases is crucial to revealing institutional policies and practices that cause *Brady* violations. *See* Rudin, *Three Case Studies*, 80

9

Fordham L. Rev. at 548–58, 563–67, 568–70 (discussing civil discovery in Section 1983 lawsuits that revealed unconstitutional practices in the Bronx, Queens, and Brooklyn district attorneys' offices).

*Monell* claims can encourage institutional reforms in prosecutors' offices, which are key to engendering compliance with *Brady*, for "studies attribute the intentional disregard of *Brady* to office culture and a failure by prosecution supervisors to create an attitude of respect for the rule." N.Y. State Bar Ass'n, *Report of the Task Force on Criminal Discovery* 63 (2015), available at https://bit.ly/4eXHxRp (last visited July 13, 2026). Section 1983 *Brady* claims thus may prevent the recurrence of *Brady* violations that otherwise would occur but never be uncovered, while compensating past victims of such misconduct who have been grievously harmed. (Of course, the same considerations apply to civil *Brady* claims against police under Section 1983.)

**B.    The touchstone of *Brady* materiality is a reasonable probability of a more favorable outcome, not proof of fabrication, as the District Court's decision mistakenly holds**

The allegations in Plaintiff-Appellant Maddix's complaint, which must be assumed to be true for purposes of the underlying motion to dismiss, are that prosecutor Kyle Reeves secretly imprisoned in a hotel

room, for nearly three days, his "star witness" Robert DeJesus, one of the only two witnesses he presented at trial. Appendix at A-24–A-25 ¶¶ 50–52, A-26 ¶ 61, A-27 ¶¶ 70–71, A-28 ¶ 75. DeJesus was held in a locked room and was not allowed to call a lawyer or his family. *Id.* at A-25 ¶¶ 55–57. Reeves told DeJesus that his release was dependent upon his testifying in accordance with the prosecution's case narrative, which DeJesus finally agreed to do and in fact did. *Id.* at A-25–A-26 ¶¶ 58–61, A-27 ¶¶ 70–71. This coercion, which brought about DeJesus's testimony and Maddix's conviction, was not disclosed at trial. *Id.* at A-27–A-28 ¶¶ 72–78. Indeed, it was never voluntarily disclosed and was only discovered, many years later, by accident. *Id.* at A-29–A-31 ¶¶ 81–103.

The District Court, citing no apposite authority, held that for Maddix's *Brady* claim to succeed, "two elements—both coercion *and* fabrication—are necessary." *Maddix v. City of New York*, 2026 WL 948287, at *5 (E.D.N.Y. Apr. 8, 2026) (emphasis in original). It dismissed Maddix's claim because it was "unable to find any allegation that [the witness]'s testimony was fabricated." *Id.* But *Brady* contains no such requirement.

11

It is basic that a *Brady* violation comprises only three elements: (1) "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (en banc) (cleaned up).

*Brady* is not limited to evidence that proves that a witness's testimony accusing the defendant is fabricated. In *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court held that *Brady* extends to evidence that merely tends to impeach the credibility of a prosecution witness, where "the *reliability* of . . . [the] witness may well be determinative of guilt or innocence." *Id.* at 154 (cleaned up) (emphasis added). Whether evidence impeaches the "reliability" of an important witness is a far different, and less taxing, inquiry than whether their testimony is "fabricated."

In *Kyles v. Whitley*, the Supreme Court further recognized that evidence may be material if it would permit the defense to call into question the good faith and integrity of the law enforcement investigation. *See Kyles*, 514 U.S. at 446 & n.15.

12

In this case, the information that the trial prosecutor imprisoned a prosecution witness for nearly three days to induce his testimony favoring the prosecution could have been used to attack the prosecution's case through both of these methods: impeachment of the witness and calling into question the good faith of the prosecution.

This Court's en banc decision in *Poventud* shows that Appellant Maddix's allegations in his complaint are sufficient to make out his claim. The Court held that *Brady* is a procedural protection that applies to all criminal defendants, guilty and innocent alike, and that even a former criminal defendant who ultimately pleaded guilty to resolve his case could sue for a prior *Brady* violation that caused him to suffer additional punishment for the very incident that was the subject of his guilty plea. *See Poventud*, 750 F.3d at 134, 138. The Court rejected the incorrect view of the lower court that "the State could violate Poventud's *Brady* rights only if Poventud is an innocent man." *Id*. at 134.

The *Brady* material that was at issue in *Poventud*—the sole eyewitness's erroneous identification of a third party—would have *impeached* that eyewitness's subsequent identification of the civil

13

plaintiff, but it would not have proven that the testimony was *fabricated. See id.* at 125–26. As the Court pointed out, "Poventud's complaint [was] less concerned with his innocence and instead focuse[d] on evidence that an identifying witness was unreliable, and evidence impeaching the credibility of significant prosecution witnesses." *Id.* at 137 n.20 (cleaned up). Indeed, the Court noted that "Poventud's allocution acknowledged his presence at the scene of the crime, which was inconsistent with his alibi defense at trial," and that Poventud was not contesting his guilty plea, yet it allowed his claim to proceed because "*Brady* does not require actual innocence, and even a guilty man is entitled to a fair trial." *Id.* at 137–38 (cleaned up).

Following *Poventud*, this Court upheld a *Monell* claim based upon a district attorney's *Brady* violation by analyzing the claim under the same three elements (as well as the additional requirement that the violation resulted from a municipal policy or practice). *See Bellamy v. City of New York*, 914 F.3d 727, 756–62 (2d Cir. 2019). In *Bellamy*, as in this case, the suppressed evidence tended to show that an accusatory witness had a motive to favor the prosecution with her testimony: prior to testifying, she had been secretly promised $2,800 in relocation

14

benefits (which, afterwards, she in fact received). *See id.* at 761–62. The Court did *not* require the plaintiff to further prove that the inculpatory testimony of the witness in question had been fabricated.

As Appellant Maddix correctly argues in his brief, the imprisoning of a prosecution witness to compel him to provide testimony inculpating the criminal defendant is, as in *Bellamy*, information unquestionably favorable to the defense, since it establishes a motive and an interest of the witness in testifying falsely and a bias in favor of the prosecution. *See* Appellant Maddix's Brief at 31–33, 37 (citing cases).

As for the prejudice or materiality element, its "touchstone . . . is a reasonable probability of a different result." *Poventud*, 750 F.3d at 133 (cleaned up) (citing language from *Kyles*). To demonstrate a "reasonable probability" that a jury would have failed to convict him, Maddix did not need to allege facts demonstrating that the witness's testimony was *fabricated*. He only needed to allege, under hornbook law, facts showing that the suppressed evidence was *material* because it would have created a reasonable probability of a more favorable outcome. Maddix's complaint does so, and thus it is plainly sufficient to raise a valid *Brady* violation claim.

15

The "adjective [reasonable] is important" to understanding the standard, because a defendant does *not* have to "demonstrate that he *would* or even *probably would* prevail at trial if the evidence were disclosed, much less that he is in fact innocent." *Poventud*, 750 F.3d at 133 (cleaned up). Instead, a defendant need only make the lesser showing that, in the absence of the suppressed evidence, he did not receive "a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.*

Were the materiality requirement only met where the evidence conclusively demonstrated that a prosecution witness's inculpatory testimony was fabricated, prosecutors would be emboldened to withhold virtually all impeachment evidence. It is exceedingly rare that impeachment evidence, whether it be evidence of motive, bias, interest, bad character, or inconsistent recollection, conclusively proves fabrication. Judging credibility is the essence of the factfinder's function, but in a criminal case the factfinder need not judge the testimony false or fabricated to rule for the defendant, just that there is a *reasonable doubt* about the testimony's accuracy. By requiring prosecutors to disclose all evidence likely to undermine "confidence" in

16

the trial verdict, *Brady* requires disclosure of evidence far less definitive than that conclusively proving a witness to be lying.

The District Court's decision, in requiring Maddix to allege fabrication, ignores that favorable evidence can be material pursuant to *Giglio* and *Kyles* even if it does not directly exculpate the defendant. Its dismissal of Maddix's lawsuit based upon this view represents a shocking departure from settled law.

## CONCLUSION

This Court should explicitly reject the District Court's profoundly mistaken holding that Appellant Maddix was required to allege that a prosecution witness's testimony against him was fabricated. Such a ruling is essential to protect not just Maddix's right to seek compensatory damages, but the future fair trial rights of state and federal criminal defendants. Because the dismissal of this case was premised upon the lower court's error, the Court should reinstate Maddix's complaint and allow discovery to proceed.

17

Respectfully submitted,

/s/ Joel B. Rudin

JOEL B. RUDIN
VICE-CHAIR, *AMICUS* COMMITTEE
NATIONAL ASSOCIATION OF
  CRIMINAL DEFENSE LAWYERS
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
jbrudin@rudinlaw.com

PARTHA SHARMA*
LAW OFFICES OF
  JOEL B. RUDIN, P.C.
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
psharma@rudinlaw.com

*Attorneys for* amicus curiae
*National Association of Criminal
Defense Lawyers*

*\*Application for admission
pending*

Dated:    New York, New York
          July 14, 2026

18

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), as well as the type-volume limitations of Local Rule 29.1(c). It was prepared in a proportionally spaced typeface using Microsoft Word and 14-point Century Schoolbook font. According to that software, this brief contains 3,094 words, not including the cover page, corporate disclosure statement, table of contents, table of authorities, signature block, or this certificate.

/s/ Joel B. Rudin

JOEL B. RUDIN
VICE-CHAIR, *AMICUS* COMMITTEE
NATIONAL ASSOCIATION OF CRIMINAL
  DEFENSE LAWYERS
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
jbrudin@rudinlaw.com

Dated:     New York, New York
         July 14, 2026