# 26-1246-cv

# United States Court of Appeals

*for the*

# Second Circuit

———— • ————

WILLIE MADDIX,

*Plaintiff-Appellant*,

– v. –

CITY OF NEW YORK, MARRIOTT HOTEL SERVICES, INC., MARRIOTT INTERNATIONAL, INC., d/b/a JW Marriott Essex House Hotel,

*Defendants-Appellees*,

KYLE REEVES,

*Defendant.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES MARRIOTT HOTEL SERVICES, INC., MARRIOTT INTERNATIONAL, INC., D/B/A JW MARRIOTT ESSEX HOUSE HOTEL

KONSTANTINOS D. KATSIRIS
EMILY SEIDERMAN WEST
CARLOS H. SALGUERO, JR.
VENABLE LLP
*Attorneys for Defendants-Appellees Marriott Hotel Services, Inc., Marriott International, Inc., d/b/a JW Marriott Essex House Hotel*
151 West 42nd Street
New York, New York 10036
(212) 307-5500

COUNSEL PRESS
A Proceed Service
The Appellate Experts®

(800) 4-APPEAL • (395043)

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellees Marriott Hotel Services, Inc. and Marriott International, Inc. state that Marriott International, Inc. is a publicly held corporation that has no parent company and no publicly held corporation owns 10% or more of its stock. Defendant Marriott Hotel Services, Inc. is a subsidiary of Marriott International, Inc., and no other publicly held corporation owns 10% or more of Marriott Hotel Services, Inc.

i

# TABLE OF CONTENTS

**Page**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT.......................................i

TABLE OF AUTHORITIES ............................................................................iv

INTRODUCTION ........................................................................................1

ISSUES PRESENTED..................................................................................4

JURISDICTIONAL STATEMENT .................................................................5

STATEMENT OF THE CASE.......................................................................5

    I.      Factual Background.......................................................................5

    II.    The FAC's Causes of Action Against Marriott ................................10

    III.   Procedural History........................................................................11

STANDARD OF REVIEW ..........................................................................13

SUMMARY OF ARGUMENT .....................................................................14

ARGUMENT ............................................................................................17

    I.      Plaintiff Fails to State Any Constitutional Claim Against Marriott Because the FAC Fails to Plausibly Allege that Marriott Engaged in State Action.......................................................17

          A.    Plaintiff Failed to Plausibly Allege Joint Action or a § 1983 Conspiracy ....................................................18

                i.     Applicable Law.............................................................18

                ii.    Plaintiff Does Not Plead a Common Goal or Conspiracy to Deprive Him of *Brady* Material ..............21

          B.    Plaintiff Waived All Other State Action Arguments................26

    II.    The District Court's Order Dismissing Plaintiff's § 1983 Claims Against Marriott May Be Affirmed on Several Independent Grounds .........................................................27

          A.    Plaintiff Failed to Plausibly Allege that Marriott is Liable for the Actions of Unnamed Hotel "Managers" under *Monell* .................................................................28

ii

B.    Plaintiff Failed to Plausibly Allege an Underlying Constitutional Violation ................................................................. 32

C.    Plaintiff's Claims Are Barred by *Heck v. Humphrey* ............... 37

D.    Plaintiff's Claims are Time-Barred ......................................... 40

    i.    The Diligence-Discovery Rule ....................................... 42

    ii.    Equitable Estoppel Does Not Apply ............................... 47

III.    Plaintiff's State Law Claim Against Marriott Should be Dismissed ....................................................................................... 51

CONCLUSION ....................................................................................... 51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abdel-Fakhara v. Vermont*,
  No. 22-2543, 2023 WL 3486236 (2d Cir. May 17, 2023)..................................46

*Amnesty Am. v. Town of W. Hartford*,
  361 F.3d 113 (2d Cir. 2004) .............................................................................29

*Anderson v. City of Rockford*,
  932 F.3d 494 (7th Cir. 2019) ............................................................................33

*Armstrong v. Ashley*,
  60 F.4th 262 (5th Cir. 2023) .............................................................................34

*Armstrong v. McAlpin*,
  699 F.2d 79 (2d Cir. 1983) ...............................................................................49

*Artec Constr. & Dev. Corp. v. City of New York*,
  No. 15 Civ. 9494, 2017 WL 5891817 (S.D.N.Y. Nov. 28, 2017).....................39

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................13, 21

*Barrows v. Becerra*,
  24 F.4th 116 (2d Cir. 2022) ..............................................................................17

*Betts v. Shearman*,
  751 F.3d 78 (2d Cir. 2014) .......................................................................*passim*

*Butcher v. Wendt*,
  975 F.3d 236 (2d Cir. 2020) .........................................................................20-21

*Cerbone v. Int'l Ladies' Garment Workers' Union*,
  768 F.2d 45 (2d Cir. 1985) ...............................................................................48

*Ciambriello v. County of Nassau*,
  292 F.3d 307 (2d Cir. 2002) .....................................................................*passim*

*Cooper v. U.S. Postal Serv.*,
  577 F.3d 479 (2d Cir. 2009) .............................................................................18

*Corcoran v. N.Y. Power Auth.*,
  202 F.3d 530 (2d Cir. 1999) .............................................................................49

*Cunningham v. Southlake Ctr. for Mental Health, Inc.*,
  924 F.2d 106 (7th Cir. 1991) ............................................................................18

*Dennis v. Sparks*,
    449 U.S. 24 (1980).................................................................22

*Donahue v. United States*,
    634 F.3d 615 (1st Cir. 2011).................................................44

*Drake v. Portuondo*,
    553 F.3d 230 (2d Cir. 2009) .................................................36

*Ellul v. Congregation of Christian Bros.*,
    774 F.3d 791 (2d Cir. 2014) ...........................................40, 48

*Fabrikant v. French*,
    691 F.3d 193 (2d Cir. 2012) .................................................17

*Freeman v. HSBC Holdings PLC*,
    57 F.4th 66 (2d Cir. 2023) ...................................................26

*Gallop v. Cheney*,
    642 F.3d 364 (2d Cir. 2011) .................................................24

*Giglio v. United States*,
    405 U.S. 150 (1972)..............................................................34

*Gilvar v. United States*,
    468 F. App'x 31 (2d Cir. 2012) (summary order).................43

*Ginsburg v. Healey Car & Truck Leasing, Inc.*,
    189 F.3d 268 (2d Cir. 1999) .................................................18

*Green v. City of Mount Vernon*,
    96 F. Supp. 3d 263 (S.D.N.Y. 2015) ....................................31

*Guccione v. United States*,
    670 F. Supp. 527 (S.D.N.Y. 1987) .................................42, 43

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983)..........................................25, 26

*Hayden v. Koons*,
    No. 25-498-CV, 2026 WL 2091681 (2d Cir. July 21, 2026) ......43, 44

*Heck v. Humphrey*,
    512 U.S. 477 (1994)...........................................................*passim*

*Hobson v. Wilson*,
    737 F.2d 1 (D.C. Cir. 1984)..................................................43

*Horn v. Politopoulos*,
    628 F. App'x 33 (2d Cir. 2015)..............................................50

*In re Philip Morris Int'l Inc.*,
  89 F.4th 408 (2d Cir. 2023) ...............................................................47

*Jackson v. City of Cleveland*,
  925 F.3d 793 (6th Cir. 2019) ............................................................33

*Jean-Laurent v. Cornelius*,
  No. 15-CV-2217, 2017 WL 933100 n.11 (S.D.N.Y. Mar. 8, 2017)...................39

*Jeffes v. Barnes*,
  208 F.3d 49 (2d Cir. 2000) ...............................................................30

*Knopf v. Esposito*,
  803 F. App'x 448 (2d Cir. 2020) .......................................................21

*Koch v. Christie's Intern. PLC*,
  699 F.3d 141 (2d Cir. 2012) .............................................................49

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
  274 F.3d 706 (2d Cir. 2001) .............................................................48

*Kronisch v. United States*,
  150 F.3d 112 (2d Cir. 1998) .................................................42, 43, 46

*Loc. Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Pelella*,
  350 F.3d 73 (2d Cir. 2003) ...............................................................27

*Lugar v. Edmondson Oil Co.*,
  457 U.S. 922 (1982)........................................................................17

*Maskin v. Mabco Transit, Inc.*,
  176 A.D.3d 1539 (3d Dep't 2019)......................................................17

*Matusick v. Erie Cnty. Water Auth.*,
  757 F.3d 31 (2d Cir. 2014) ...............................................................29

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010)........................................................................42

*Meyer v. Seidel*,
  89 F.4th 117 (2d Cir. 2023) .............................................................44

*Missel v. Cnty. of Monroe*,
  351 F. App'x 543 (2d Cir. 2009) .......................................................29

*Moates v. Barkley*,
  147 F.3d 207 (2d Cir. 1998) .............................................................27

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1974)..............................................................*passim*

*Montero v. City of Yonkers, N.Y.*,
890 F.3d 386 (2d Cir. 2018) ...................................................................13, 29, 31

*Muhammad v. Close*,
540 U.S. 749 (2004).........................................................................................38

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regul. Dist.*,
673 F.3d 84 (2d Cir. 2012) ..............................................................................47

*Opperisano v. Jones*,
286 F. Supp. 3d 450 (E.D.N.Y. 2018) ..............................................................41

*Owens v. Okure*,
488 U.S. 235 ....................................................................................................41

*Pangburn v. Culbertson*,
200 F.3d 65 (2d Cir. 1999) ..............................................................................21

*Pearl v. City of Long Beach*,
296 F.3d 76 (2d Cir. 2002) .........................................................................40, 41

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986)...............................................................................28, 29, 30

*People v. Pichardo*,
1 N.Y.3d 126 (2003) ........................................................................................40

*People v. Wright*,
27 N.Y.3d 516 (2016) ......................................................................................40

*Pesina v. Johnson*,
913 F.2d 53 (2d Cir. 1990) ..............................................................................40

*Phhhoto Inc. v. Meta Platforms, Inc.*,
123 F.4th 592 (2d Cir. 2024) ...........................................................................49

*Pipitone v. City of New York*,
57 F. Supp. 3d 173 (E.D.N.Y. 2014) ...........................................................43, 46

*Poventud v. City of New York*,
750 F.3d 121 (2d Cir. 2014) .........................................................................37, 38

*Rendell-Baker v. Kohn*,
457 U.S. 830 (1982).........................................................................................18

*Roe v. City of Waterbury*,
542 F.3d 31 (2d Cir. 2008) ......................................................... 28-29, 30, 32

*Rojas v. Alexander's Dep't Store, Inc.*,
924 F.2d 406 (2d Cir. 1990) .........................................................................15, 28

*Sanders v. Williams*,
No. 14-cv-7219 (PAC), 2015 WL 7963135 (S.D.N.Y. Nov. 10, 2015).............39

*Schlein v. Milford Hosp., Inc.*,
561 F.3d 427 (2d Cir. 1977) ...........................................................19

*Schwab v. Smalls*,
435 F. App'x 37 (2d Cir. 2011) .......................................................31

*Segal v. City of New York*,
459 F.3d 207 (2d Cir. 2006) ...........................................................28

*SHAD All. v. Smith Haven Mall*,
66 N.Y.2d 496 (N.Y. 1985) ...........................................................17

*Shumway v. United Parcel Serv., Inc.*,
118 F.3d 60 (2d Cir. 1997) ............................................................27

*Singleton v. City of New York*,
632 F.2d 185 (2d Cir. 1980) ...........................................................41

*St. Louis v. Praprotnik*,
485 U.S. 112 (1988)........................................................................30

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008) ......................................................40, 44

*Strickler v. Greene*,
527 U.S. 263 (1999)........................................................................34

*Su v. Filion*,
335 F.3d 119 (2d Cir. 2003) ...........................................................36

*Sybalski v. Indep. Grp. Home Living Program, Inc.*,
546 F.3d 255 (2d Cir. 2008) ...........................................................19

*Teichmann v. New York*,
769 F.3d 821 (2d Cir. 2014) ......................................................16, 38

*Turner v. United States*,
582 U.S. 313 (2017)........................................................................34

*United States v. Coppa*,
267 F.3d 132 (2d Cir. 2001) ...........................................................34

*United States v. Hunter*,
32 F.4th 22 (2d Cir. 2022) ...............................................34, 35, 37

*United States v. Payne*,
63 F.3d 1200 (2d Cir. 1995) .......................................................35, 37

*United States v. Petrillo*,
821 F.2d 85 (2d Cir. 1987) ...................................................................35

*United States v. Vozzella*,
124 F.3d 389 (2d Cir. 1997) .................................................................36

*Vaughn v. Phoenix House N.Y., Inc.*,
957 F.3d 141 (2d Cir. 2020) .................................................................18

*Vives v. City of N.Y.*,
524 F.3d 346 (2d Cir. 2008) .................................................................29

*Zerilli-Edelglass v. N.Y.C. Transit Auth.*,
333 F.3d 74 (2d Cir. 2003) ...................................................................48

**Statutes and Other Authorities:**

U.S. Const., Amend. V ................................................................................10

U.S. Const., Amend. XIV ......................................................................10, 17

28 U.S.C. § 1291 ...........................................................................................5

28 U.S.C. § 1331 ...........................................................................................5

28 U.S.C. § 1343 ...........................................................................................5

42 U.S.C. § 1983 ..................................................................................*passim*

CPL § 440.10 ...............................................................................................40

Fed. R. App. P. 28(a) ...................................................................................27

Fed. R. Civ. P. 9(b) ......................................................................................49

Fed. R. Civ. P. 12(b)(6)................................................................................13

Mosi Secret, *Brooklyn Prosecutor's Office is Accused of Detaining Trial Witnesses*, N.Y. Times (May 29, 2013), https://www.nytimes.com/2013/05/30/nyregion/brooklyn-prosecutors-office-accused-of-detaining-trial-witnesses.html................................................................................... 46

**INTRODUCTION**

Plaintiff-Appellant Willie Maddix ("Plaintiff" or "Maddix") seeks millions of dollars in damages from defendants Marriott Hotel Services, Inc. ("Marriott Services") and its corporate parent, Marriott International, Inc. ("Marriott International") (together, "Marriott"), based on the alleged failure of the City of New York to disclose to Plaintiff that a witness in his 1994 criminal trial was "coerced" to testify, purportedly in violation of Plaintiff's constitutional rights. Invoking 42 U.S.C. § 1983, Plaintiff claims that an assistant district attorney ("ADA Reeves") from the Kings County District Attorney's Office ("KCDAO") coerced this witness to testify by holding the witness at a Marriott-branded hotel, which Plaintiff alleges was a common practice under the KCDAO's "Hotel Custody Program."

On the basis that Marriott rented a hotel room to the KCDAO over thirty years ago and provided routine hotel services to the KCDAO, Plaintiff alleges a wide-ranging conspiracy to facilitate witness imprisonment *and* to conceal that wrongdoing. A reasonable person would question why Marriott, a corporation in the business of managing and franchising hotels, should be held liable for prosecutorial misconduct allegedly committed by City prosecutors. The answer is that it should not.

The district court correctly dismissed Plaintiff's claims against Marriott on the ground that Marriott did not engage in state action, as required to sustain a claim under

§ 1983. To satisfy the state action requirement here, the First Amended Complaint ("FAC") must allege facts showing that Marriott and the KCDAO had a common goal to deprive Plaintiff of his rights. Plaintiff attempts to impute state action to Marriott by relying on nebulous allegations of a "conspiracy" between Marriott and the KCDAO. However, the FAC is bereft of any factual allegations that support this conspiracy. At most, it alleges that Marriott managers provided hotel services to the KCDAO and assumes—based on allegations about the Hotel Custody Program from other lawsuits that did not name Marriott or any hotel company as a defendant—that those managers had reason to believe that a witness was being held there involuntarily. But critically, even accepting these allegations and assumptions as true, *none* of them support the conclusion that Marriott shared a goal or agreed with the KCDAO to deprive Plaintiff of his constitutional rights to *Brady* material. Indeed, the FAC does not even allege that Marriott knew who Plaintiff was, let alone that Marriott knew that Plaintiff faced a criminal trial. For these reasons, the district court properly found that Plaintiff failed to allege state action by Marriott and that "[p]ut simply, the Marriott Defendants offered standard hotel services to the City." SPA-14.

Plaintiff's failure to allege that Marriott was a state actor is fatal to all of his claims against Marriott. Those claims must also be dismissed for any one of several additional, independent reasons. *First*, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1974), Marriott is not liable for Plaintiff's alleged injuries because they were not caused by any

2

Marriott policy or custom. The FAC attempts to allege that "local managers" employed at the Marriott LaGuardia were delegated policymaking authority such that Marriott could be held liable for their acts, but that speculative and conclusory assertion is insufficient as a matter of law. There is nothing in the FAC that remotely suggests a company-wide policy or custom of abetting prosecutorial misconduct. Further, even if the "local managers" at the Marriott LaGuardia were aware that the KCDAO temporarily detained a trial witness, it does not follow that they caused prosecutors' failure to disclose the witness's stay to Plaintiff during his criminal proceeding.

*Second*, the FAC does not plausibly allege an underlying constitutional violation, because even assuming that the witness's testimony was coerced, the FAC fails to sufficiently allege that its disclosure would have been material to the outcome of Plaintiff's criminal trial.

*Third*, because this lawsuit is a collateral attack on Plaintiff's underlying conviction and Plaintiff has not secured a vacatur of that conviction, no § 1983 claim has accrued. *See Heck v. Humphrey*, 512 U.S. 477, 486–90 (1994). While Plaintiff seeks to rely on a narrow exception to the *Heck* doctrine, this exception is unavailable to him, as he was not deprived of *habeas* or other collateral relief.

*Finally*, Plaintiff's claims are time-barred and—accepting all of Plaintiff's allegations as true for purposes of this appeal—there are no equitable circumstances that excuse this untimeliness.

For these reasons, amplified below, Plaintiff's attempt to hold Marriott liable for alleged prosecutorial misconduct that occurred decades ago should be rejected, and the district court's dismissal of all claims asserted against Marriott—including its decision not to exercise supplemental jurisdiction over Plaintiff's state constitutional claim—should be affirmed.

## ISSUES PRESENTED

As relevant to Marriott's arguments, the issues on appeal are as follows:

1. Whether Plaintiff plausibly alleged that Marriott, a corporation that is in the business of managing, franchising, and licensing hotel rooms, is a state actor for purposes of liability under 42 U.S.C. § 1983.

2. Whether the district court's dismissal of Plaintiff's § 1983 claims against Marriott should be affirmed on one or more additional independent grounds, including the following: (a) Plaintiff failed to plausibly allege that Marriott is liable for the acts of unnamed hotel "managers" under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1974); (b) Plaintiff failed to plausibly allege an underlying constitutional violation; (c) Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and (d) Plaintiff's claims are time-barred.

3. Whether the Court should affirm the district court's order declining to exercise supplemental jurisdiction over Maddix's state law claim against Marriott.

4

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. The district court granted all Defendants' motions to dismiss on April 8, 2026 and entered judgment on April 9, 2026. A-8, A-373–74. Maddix filed a notice of appeal on May 4, 2026. A-375. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE CASE

### I.  Factual Background

The facts as alleged in the First Amended Complaint (A-9–82, cited throughout as "FAC") are as follows. Plaintiff was arrested in 1993. FAC ¶¶ 21–22. His case was assigned to ADA Reeves of the KCDAO. *Id.* In July 1994, the weekend before Maddix's trial, ADA Reeves obtained an *ex parte* material witness warrant order for Robert DeJesus ("DeJesus"), who would be one of two witnesses to testify at Plaintiff's trial. *Id.* ¶¶ 50–51, 70. DeJesus was transported to and housed at the Marriott LaGuardia from July 30 to August 1, 1994—about 48 hours. *Id.* ¶¶ 52, 61; A-184. According to the FAC, ADA Reeves visited DeJesus at the hotel and conveyed that if he testified "in accordance with Reeves's case narrative, DeJesus would be released from custody." FAC ¶¶ 58–59. DeJesus testified and Plaintiff was convicted of criminal possession of a weapon in the second degree. *Id.* ¶¶ 3, 70, 73, 78.

As to Marriott, Plaintiff relies on only two documents that relate to DeJesus's stay, both of which are dated July 29, 1994. *See* Plaintiff Br. 41. The first is a

KCDAO "Custody Reservation Request" form for "Custody #1407," which includes a notation to "material witness – Robert DeJesus." A-181. The second is a boilerplate KCDAO reservation confirmation form addressed to the "LaGuardia Marriott Hotel" referencing the same "Custody # 1407" and stating that the "custody was reserved under the name 'Marguerite G.'"[1] A-182. Handwritten on the form are the notes "No Food/Room Service," "No Pay Television," and "Only telephone service in double room. None in single room." *Id.*

The FAC also attaches a document that Plaintiff claims is a KCDA custody schedule for the LaGuardia Marriott. FAC ¶ 54 & A-184. The document refers to the "Location" of the LaGuardia Marriott, lists three successive dates in 1994 around the time of Plaintiff's criminal case, and assigns certain names (of what appear to be law enforcement officials) to those dates. It does not refer to either DeJesus or Maddix. Plaintiff infers that this document reflects the rotation of detective-investigators supervising DeJesus and thus confirms that DeJesus was a "prisoner"—but the document itself makes no such inference. FAC ¶ 54.

The FAC contains only a few allegations that specifically relate to Marriott, all of which relate to the KCDAO's alleged use of hotel rooms to house witnesses. Specifically, Plaintiff alleges that Marriott engaged in the following conduct: (a) rented rooms to KCDAO, FAC ¶ 297; (b) followed the KCDAO's instructions

---

[1] "Marguerite's" full name is not fully legible on the form.

with respect to those rooms, *id.* ¶ 303; (c) used the same custody number tracking system as the KCDAO in billings for services, *id.* ¶¶ 301–02; (d) communicated with the KCDAO, *id.* ¶ 304(a); (e) saw that the witnesses were in handcuffs or shackles and damage to hotel room doors resulting from the use of handcuffs, *id.* ¶ 304(c); (f) was aware that the NYPD responded to complaints of violent behavior at the hotel, *id.* ¶ 304(e); (g) kept the practice confidential by instructing employees not to communicate with witnesses and rewarding employees who complied, *id.* ¶¶ 308, 311; (h) reported incidents related to the witnesses to the KCDAO and not law enforcement, *id.* ¶ 310; and (i) made money off the endeavor, extending government rates to the KCDAO, *id.* ¶¶ 312–13. As discussed in more detail below, these allegations are largely assumptions that Plaintiff extrapolated from complaints filed in three other lawsuits, none of which name any hotel companies as a defendant or contain any allegations that hotel operators such as Marriott conspired with the KCDAO to imprison witnesses.

On appeal, Plaintiff argues that the FAC alleges that Marriott assisted in the "creation and approval" of the custody reservation request and reservation confirmation form referred to above. Plaintiff Br. at 18, 41. The FAC, however, makes no such allegation. Instead, it vaguely alleges that Marriott assisted in the approval or creation of paperwork generally. FAC ¶ 300. The FAC does not allege that either document was sent to or received by the Marriott Defendants, and the

FAC admits that the custody reservation request form does not refer to Marriott or the specific hotel where DeJesus stayed.

Aside from the KCDA's room reservation at a Marriott hotel in 1994, there are no *factual* allegations tying the Marriott Defendants to any of the alleged constitutional violations. Instead, the FAC supposes that the Marriott Defendants conspired with the KCDAO or maintained a policy, custom, or practice to facilitate and aid and abet the KCDAO's actions by citing to allegations and testimony from other lawsuits filed against the City. *See, e.g.*, FAC ¶¶ 154 n.19, 155.

In particular, the FAC adopts the allegations from complaints filed in three other cases that did not name Marriott as a defendant.[2] It incorporates allegations that witnesses were "kidnapped and imprisoned" in hotel rooms, "with their hotel doors shackled, guarded by detective-investigators, and without the ability to use or have visitors without the KCDA's permission." FAC ¶ 153(g); *compare* SA-275 (*Cooper* Compl. ¶ 296(g) (almost identical allegations)); SA-191 (*Quezada* Compl. ¶ 170(b) (similar allegations)); SA-136 (*Collins* Compl. ¶ 441(b) (similar allegations)). The plaintiffs in these other lawsuits asserted § 1983 due process claims against certain ADAs and the City, premised on an array of alleged

---

[2] The three cases are: *Collins v. City of New York, et al.*, 11-CV-766 (E.D.N.Y. 2011) (ECF No. 1) ("*Collins* Compl."), *Quezada v. City of New York*, 16-CV-6577 (E.D.N.Y. 2016) (ECF No. 8) ("*Quezada* Compl."), and *Cooper v. City of New York, et. al.*, 21-CV-4171 (E.D.N.Y. 2021) (ECF No. 1) ("*Cooper* Compl."). *See* SA-52–323.

misconduct by KCDA prosecutors. *See, e.g.*, SA-127–161 (*Collins* Compl., ¶¶ 414–523); SA-189–210 (*Quezada* Compl., ¶¶ 163–229); SA-273–303 (*Cooper* Compl., ¶¶ 292–361, 362–406). All three of these unrelated cases were resolved before summary judgment. *See Collins*, ECF No. 211; *Quezada*, ECF No. 49; *Cooper*, ECF No. 56.

Notably, the complaints from these unrelated litigations that the FAC relies on do not name hotel companies as defendants. Even where hotels or a "Hotel Custody Program" *are* mentioned, there are no allegations that hotel managers conspired with the KCDAO to imprison witnesses.[3] Based on the allegations in these cases, Plaintiff assumes the Marriott-related allegations summarized above—e.g., that Marriott communicated with the KCDAO, "observed" that the witnesses were in handcuffs or shackles, noticed damage to hotel room doors resulting from the use of handcuffs, and would have been aware that the NYPD responded to complaints of violent behavior at the hotel. FAC ¶ 304. But there are no factual

---

[3] Still other factual distinctions may be drawn: for example, all three lawsuits allege that witnesses in the plaintiffs' criminal trials were coerced to provide testimony that was *false and later recanted*, which the FAC does not allege as to DeJesus. SA-71–73, -76–81, -84, -88, 93-94, -111–112 (*Collins* Compl. ¶¶ 60, 71, 73, 89, 98–118, 219–221 102, 116, 124, 129, 148, 183, 324, 331); SA-175–181, 187–188 (*Quezada* Compl. ¶¶ 64, 69-90, 106–109, 156-60); SA-223, -236–238, -240–41, -247–49, -259, -261, (*Cooper* Compl. ¶¶ 3–4, 82–95, 108–122, 153, 159–60, 166, 218–23, 232–34). And all three plaintiffs' convictions were overturned prior to the § 1983 cases being filed, which is not the case here. SA-114–15 (*Collins* Compl. ¶¶ 353–360); SA-185–86 (*Quezada* Compl. ¶¶ 134–143); SA-259–61 (*Cooper* Compl. ¶¶ 217–235).

allegations relating to Marriott in the FAC or in any of the other complaints that Plaintiff relies on that allow these inferences to be drawn.

Plaintiff was released in 2012. *Id.* ¶ 100. He alleges that "[t]he first time [he] learned of the *Brady/Giglio* material was on December 18, 2024, when a researcher working on an unrelated wrongful conviction case alerted Maddix to the *Brady/Giglio* material in his case, which was obtained through a public records request." *Id.* ¶ 103. Plaintiff does not specify what he received, but presumably, it was the documentation of DeJesus's hotel stay. *See* A-181–84.

## II. The FAC's Causes of Action Against Marriott

The FAC asserts two primary causes of action against all Defendants pursuant to § 1983: (1) violation of Plaintiff's Fifth and Fourteenth Amendment rights to a fair trial, based on the KCDA's suppression of *Brady/Giglio* material during his criminal trial (First Cause of Action) (FAC ¶¶ 118–27), and (2) violation of Plaintiff's substantive due process rights under the Fifth and Fourteenth Amendments, based on the alleged "cover up" of the alleged *Brady* material post-conviction (Second Cause of Action) (*id.* ¶¶ 139–48).

Plaintiff's two other federal constitutional claims against Marriott are theories of liability in support of his primary § 1983 claims. The Sixth Cause of Action asserts a § 1983 "*Monell* claim" based on Marriott's alleged aiding and abetting of the KCDAO by providing hotel rooms for the Hotel Custody Program, *id.* ¶¶ 296–

10

316, and the Seventh Cause of Action asserts a § 1983 civil conspiracy/aiding and abetting claim, *id.*, ¶¶ 317–25. Finally, Plaintiff asserts a parallel due process claim under the New York State Constitution (Eighth Cause of Action). *Id.* ¶¶ 326–29.

## III. Procedural History

Plaintiff filed the FAC in April 2025. A-9. On May 29, the Court granted Marriott and the City's joint motion to stay discovery pending resolution of their anticipated motions to dismiss. *See* A-5 (ECF No. 23). Plaintiff voluntarily dismissed Defendant ADA Kyle Reeves, the individual prosecutor originally named in the FAC. *See id.*

In June and July 2025, Marriott and the City filed pre-motion letters in anticipation of their motions to dismiss. A-5–6 (Minute Entries); SA-1–5 (ECF No. 64, Marriott's Pre-Motion Letter). The Court directed plaintiff, twice, to address whether he believed the complaint could be amended to address the issues raised in either pre-motion letter. A-6. In opposition to the letters, Plaintiff asserted that "the allegations in the [Amended Complaint] are sufficient to establish [the Defendants'] liability," and that absent "further discovery, there is nothing Plaintiff can add to the FAC by virtue of an amendment." SA-9 (ECF No. 26 at 5 n.3).[4] Plaintiff attached

---

[4] While Plaintiff's Appendix purports to include Plaintiff's July 21, 2025, pre-motion response letter at A-253, *see id.*, Table of Contents at iii (Dkt. No. 30.1), that portion of the Appendix is in fact missing. Volume One of the Appendix ends at A-184 and Volume 2 starts at A-278.

to his second letter a document purporting to be a "Hotel Custody Log" which Plaintiff asserted "documents six other occasions in one month at the time of Maddix's trial, with Marriott serving as a KCDA 'black site.'" SA-6. *See also* SA-15–16 (ECF 27-1).

The district court gave Plaintiff another opportunity to seek leave to amend when it set a briefing schedule on the motions to dismiss, and Plaintiff again declined. A-6 (Minute Order); SA-12 (ECF No. 27 at 1).

On September 2, 2025, the City and Marriott Defendants filed their respective motions to dismiss. *See* A-7 (ECF Nos. 28, 30–32). In an opposition brief filed on October 1, 2025, Plaintiff opposed the merits but did not request leave to amend in the alternative. A-7 (ECF Nos. 34–35); A-286–355.

On April 8, 2026, the district court issued a Memorandum and Order granting Defendants' motions to dismiss, with prejudice (the "Order"). SPA-1–18. As relevant to Marriott, the district court ruled that Plaintiff failed to allege a constitutional violation supporting § 1983 liability based on the failure to disclose Reeves's coercion of DeJesus's testimony, on the ground that the FAC only alleged that the testimony was coerced, not fabricated. SPA-9–11. The district court also ruled that Marriott was not a state actor and therefore did not act under color of state law, as required by § 1983. SPA-12–SPA-15. It reasoned that Plaintiff did not allege that Marriott shared a common goal with the KCDA to violate Plaintiff's

12

rights—at most, Marriott "offered standard hotel services to the City." *Id.* It further concluded that Plaintiff did not allege state action under any other relevant test. *Id.*

The district court declined to resolve the Defendants' motions on two alternative grounds for dismissal advanced by each—that Plaintiffs' claims are barred by *Heck* and the statute of limitations. SPA-5–SPA-8. After concluding that Plaintiff failed to state any federal claim against any Defendant, the district court declined to exercise supplemental jurisdiction over Plaintiff's state constitutional claim against Marriott. SPA-16–17.

The district court entered judgment on April 9, 2026. SPA-19 (ECF No. 43). Plaintiff filed a notice of appeal on May 4, 2026. A-375 (ECF No. 44).

## STANDARD OF REVIEW

This Court reviews "*de novo* the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 394 (2d Cir. 2018) (internal quotation marks omitted). The complaint's allegations, however, must be "plausible on [their] face," demonstrating "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted).

**SUMMARY OF ARGUMENT**

I. The district court correctly dismissed Plaintiff's § 1983 claims against Marriott because the FAC fails to plausibly allege that Marriott engaged in state action. "[C]onstitutional torts are only actionable against state actors or private parties acting 'under the color of' state law." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002)). The FAC does not satisfy any of the recognized tests for attributing a private entity's actions to the state—compulsion, joint action, or public function.

Only the joint action test is at issue here. Plaintiff has waived all other state action arguments—including the public function and compulsion tests—by failing to raise them either in opposition to Marriott's motion to dismiss or in this appeal.

The FAC does not satisfy the joint action test because it does not plausibly allege that Marriott and the KCDAO shared a common goal to deprive Plaintiff of his constitutional rights. At most, the FAC alleges that Marriott rented hotel rooms to the KCDAO, complied with the KCDAO's instructions regarding those rooms, and was aware that the witnesses were held (by law enforcement) against their will. Those allegations do not suggest any goal or agreement on the part of Marriott to conceal DeJesus's stay from Plaintiff during his criminal trial. Plaintiff's arguments that the Court may infer a conspiracy to withhold *Brady* material from Marriott's approval of "paperwork" related to DeJesus's stay, or that Marriott was aware that

14

the KCDAO was imprisoning witnesses illegally, are not supported by the FAC and/or do not establish any agreement to withhold *Brady* material from Plaintiff.

II.  Even if the FAC had sufficiently alleged state action, Plaintiff's claims against Marriott warrant dismissal on several independent grounds, any one of which is sufficient to affirm the district court's order.

A.  Plaintiff failed to plausibly allege *Monell* liability.  Private employers, like municipalities, are not liable under § 1983 on a *respondeat superior* theory; a plaintiff must allege that an official "policy [or] custom" caused the injury.  *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990).  The FAC's conclusory assertion that unnamed "local managers" at the Marriott LaGuardia Hotel were "wholly delegated final policymaking authority" is insufficient to meet this standard.  Moreover, any decision to rent rooms to the KCDAO did not cause the KCDAO's purported concealment of *Brady* material from Plaintiff.

B.  The FAC fails to plausibly allege an underlying constitutional violation. The FAC does not plausibly allege that disclosure of DeJesus's coerced testimony would have been material to the outcome of Plaintiff's criminal trial.  The FAC does not describe the substance of either witness's testimony or explain why impeachment of DeJesus would have created a reasonable probability of a different verdict.

C.  Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because his conviction has never been invalidated.  Neither the Supreme Court nor

15

this Court has adopted the categorical "non-custody exception" that Plaintiff advocates. Even under the narrow exception discussed in a concurrence in *Teichmann v. New York*, 769 F.3d 821, 827–28 (2d Cir. 2014), Plaintiff cannot justify its application here: he spent years in custody when habeas relief was available to him, and after allegedly discovering the Brady material, failed to seek collateral relief through available state proceedings, proceeding instead to this § 1983 action.

D. Plaintiff's claims are time-barred. Assuming arguendo that *Heck* does not bar the claims, the three-year statute of limitations expired at the latest in 2015. The federal diligence-discovery rule does not save Plaintiff's claims because the FAC itself acknowledges that there was substantial available information about ADA Reeves's and DA Hynes's alleged misconduct, placing Plaintiff on inquiry notice as early as 2011. Plaintiff, however, failed to exercise due diligence by pursuing a public records request or other investigation. Equitable estoppel is likewise unavailable because the FAC does not allege that Marriott concealed anything from Plaintiff or that any fiduciary relationship gave rise to a duty to disclose.

III. Finally, Plaintiff does not challenge the district court's decision to decline supplemental jurisdiction over his state law claim against Marriott. Assuming the Court agrees that no federal cause of action against Marriott survives, it should affirm the dismissal of that claim as well.

16

## ARGUMENT

### I. Plaintiff Fails to State Any Constitutional Claim Against Marriott Because the FAC Fails to Plausibly Allege that Marriott Engaged in State Action

This Court has long recognized that "[c]onstitutional torts are only actionable against state actors or private parties acting 'under the color of' state law.'" *Betts*, 751 F.3d at 84 (quoting *Ciambriello*, 292 F.3d at 323); *see also Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012). This "state action" requirement is coextensive with the "under color of state law" language of Section 1983. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982) (explaining that the "'under color of state law; 'and the 'state action' requirement of the Fourteenth Amendment are identical"). A private entity's actions may be fairly attributed to the state only "(1) when the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); and (3) when the entity has been delegated a public function by the state ('the public function test')." *Barrows v. Becerra*, 24 F.4th 116, 135 (2d Cir. 2022) (cleaned up) (quoting *Fabrikant*, 691 F.3d at 207).[5] With respect to Marriott, the FAC does not satisfy any of these tests.

---

[5] State action is also required to state a claim against Marriott under the New York Constitution. *Maskin v. Mabco Transit, Inc.*, 176 A.D.3d 1539, 1542–43 (3d Dep't 2019) (citing *SHAD All. v. Smith Haven Mall*, 66 N.Y.2d 496, 506 (N.Y. 1985)).

## A. Plaintiff Failed to Plausibly Allege Joint Action or a § 1983 Conspiracy

The district court correctly found that the FAC does not satisfy the joint action test because the FAC does not plausibly allege that Marriott and the KCDAO shared a common goal to deprive Plaintiff of his rights.

### i.     Applicable Law

"A private actor can only be a 'willful participant in joint activity with the State or its agents' if the two share some common goal to violate the plaintiff's rights." *Betts*, 751 F.3d at 85 (quoting *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991)). It is not enough that a private party contracted with, provided services to, or furnished information to the government; there must be a "plan, prearrangement, conspiracy, custom, or policy." *Ginsburg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272–73 (2d Cir. 1999) (internal citation and quotation marks omitted) (cited by Plaintiff); *see also, e.g.*, *Vaughn v. Phoenix House N.Y., Inc.*, 957 F.3d 141, 147 (2d Cir. 2020) (explaining that plaintiff's § 1983 claim against drug treatment facility where he was required to work in lieu of incarceration warranted dismissal for failure to allege a common goal to deprive the plaintiff of his rights); *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 492 (2d Cir. 2009) (holding that a defendant's "contract with the government does not convert its conduct into state action") (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982)); *Ginsburg*, 189 F.3d at 272 (holding that car leasing company that called

18

police to report plaintiff's hostile behavior and provided background information to police did not share a common goal of violating the plaintiff's due process rights).

Thus, Plaintiff cannot satisfy the joint action test merely by alleging that Marriott was involved in some "activity" with the KCDAO. *Cf. Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257–58 (2d Cir. 2008) ("It is not enough [] for a plaintiff to plead state involvement in '*some activity* of the institution alleged to have inflicted injury upon a plaintiff'; rather, the plaintiff must allege that the state was involved 'with the *activity that caused the injury*' giving rise to the action.") (emphasis in original) (quoting *Schlein v. Milford Hosp., Inc.*, 561 F.3d 427, 428 (2d Cir. 1977)). This makes perfect sense; otherwise, a private company could be subject to § 1983 liability any time it was involved in some governmental activity including (as relevant here) for simply providing routine business services to the government.

As to Marriott, the factual allegations in the FAC establish only that Marriott rented hotel rooms to the KCDAO and provided associated services. FAC ¶¶ 15–18 (alleging Marriott and its subsidiary "Marriott Hotel Services, Inc. owned and operated the Marriott LaGuardia Hotel"); *id.* ¶¶ 52, 55, 57–58 (alleging the KCDA reserved Marriott hotel rooms and that DeJesus was held in a Marriott hotel room); *id.* ¶¶ 299, 303, 313 (alleging Marriott contracted with the KCDA for hotel rooms at "government rates"). Yet Plaintiff contends that Marriott engaged in state action by

19

participating in a conspiracy with KCDAO "to (1) illegally imprison DeJesus, (2) coverup the *Brady/Giglio* material resulting from those actions, and (3) 'to deprive *Maddix of his constitutional rights* to timely disclosure of material evidence' under *Brady*, *Giglio*, and due process." Plaintiff Br. at 40 (citing FAC ¶ 321) (emphasis in original); *see also id.* at 38–39 ("A private party who conspires with a state official acts under color of state law for § 1983 purposes."). This is a bridge too far.

As an initial matter, this Court has observed that "[a] Section 1983 conspiracy claim is distinct from one of joint action." *Betts*, 751 F.3d at 84 n.1. While the two theories are analytically distinct (one is a threshold state action question, the other is a separate claim with its own elements), their tests are overlapping. A plaintiff must plead *specific* elements to establish a § 1983 conspiracy, namely: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324–25 (citation omitted). *See also id.* at 324 (noting that "the analysis of [whether a plaintiff pleaded a § 1983 conspiracy claim] is very similar to the" state action analysis).

Regardless of how the issue is framed ("joint action" or § 1983 conspiracy), the FAC must plead *facts* supporting a (a) "common goal" or (b) conspiracy to deprive the Plaintiff of his rights. *See Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir.

20

2020) (holding that to plead a § 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit the unconstitutional act) (citing *Ciambriello*, 292 F.3d at 324); *Betts*, 751 F.3d at 84–85 (affirming dismissal of plaintiff's constitutional claim against private citizen for failure to plausibly allege a common goal, only implausible assertions that police coached the defendant to provide false testimony).  Conclusory, vague, or speculative allegations are insufficient.  *See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) ("conclusory allegations of a § 1983 conspiracy are insufficient" (cleaned up)); *accord Knopf v. Esposito*, 803 F. App'x 448, 453 (2d Cir. 2020) (summary order); *see also Iqbal*, 556 U.S. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

Here, Plaintiff concedes that there must be a common goal or agreement to inflict the specific injury of which Plaintiff complains here (deprivation of *Brady* material).  Plaintiff Br. at 38–40.  But for the reasons discussed below, the FAC fails to allege any such goal.

> ii.     *Plaintiff Does Not Plead a Common Goal or Conspiracy to Deprive Him of* Brady *Material*

Here, the FAC does not come close to plausibly alleging that Marriott and the KCDAO shared a common goal to deprive Plaintiff of *Brady* material.  The FAC does not allege (nor could it) that Marriott—a hotel operator—had any involvement

21

in Plaintiff's criminal trial or any collateral proceedings. Instead, the FAC alleges that Marriott rented hotel rooms to the KCDAO, complied with the KCDAO's instructions as to the rooms (such as reserving adjoining rooms with telephone service only for the double room) and what services (such as "No Food / Room Services" and "No Pay Television") to provide, and used the same custody number system as the KCDAO to track room reservations. *See* A-181 (KCDAO Custody Reservation Request form); A-182 (KCDAO reservation confirmation form); FAC ¶¶ 301–09, 313–14.

Those allegations do not suggest any goal or agreement on the part of Marriott to conceal DeJesus's stay from Plaintiff during his criminal trial or any collateral proceedings. As the district court observed, SPA-13–14, Plaintiff's "conspiracy theory rests on speculative and conclusory allegations" that Marriott and the KCDAO agreed to "cover-up" DeJesus's imprisonment, which is not enough. *See, e.g.*, *Ciambriello*, 292 F.3d at 323–25 (dismissing § 1983 conspiracy claim against private union as conclusory where plaintiff provided no factual allegations to support conspiracy, only vague or general allegations); *see also Betts*, 751 F.3d at 85. Plaintiff cites only one case finding that the plaintiff sufficiently alleged state action, which concerned far more involved and extreme conduct on the part of the private actor—a corrupt agreement to procure an injunction against the plaintiffs by bribing a judge. *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). By contrast here, the

22

FAC is bereft of allegations linking Marriott to any common goal with the KCDAO—much less a goal to deprive Plaintiff of anything.

Plaintiff's arguments that the Court may *infer* a conspiracy to withhold *Brady* material are equally infirm. Plaintiff makes three such arguments.

*First*, he argues that Marriott "participated in creating and approving" the custody reservation request form (which does not refer to Marriott) and the room reservation letter (which the KCDAO addressed to the Marriott LaGuardia), both of which are attached to the FAC. Plaintiff Br. at 41. But this theory is not supported by the FAC, which only vaguely alleges, in a single paragraph, that Marriott "participated" in creating or approving unidentified "paperwork" to facilitate the Marriott "policy" of aiding the KCDAO's witness imprisonment. FAC ¶ 300. Notably, the custody reservation request form and room reservation letter on which Plaintiff relies are cited in a completely different section of the FAC, as support for allegations relating to the KCDAO (not Marriott)—namely, that the KCDAO assigned a custody number and held DeJesus in a room with no telephone. *Id.* ¶¶ 53–54, 57. Thus, there is no factual allegation that Marriott created or approved (or participated in creating or approving) these documents. Regardless, creating or approving paperwork related to DeJesus's hotel stay bears no relation to a supposed agreement to conceal that stay from Plaintiff, and Plaintiff cites no authority supporting such a radical inference.

23

*Second*, Plaintiff argues that the alleged facts demonstrate that Marriott employees knew that the hotel custody program was illegal. He points to allegations that those employees communicated with the KCDAO Witness Relocation Supervisor, observed that the witnesses were prisoners and were transported in handcuffs and leg shackles, observed damage to the hotel room doors resulting from the witnesses being held, and were aware that NYPD officers responded to the hotel because of volatile prisoner behavior. Plaintiff Br. at 42–43 (citing FAC ¶ 304).

These "allegations" are assumptions based on allegations about the Hotel Custody Program made in complaints filed in unrelated lawsuits (none of which resulted in an adverse judgment or named a hotel operator such as Marriott as a defendant). *See supra* pp. 8–9. As such, they do not bear any specific relation to Marriott whatsoever. Further, to infer that Marriott was aware that law enforcement was holding witnesses illegally based on allegations that Marriott employees observed that the witnesses were held *involuntarily* is illogical. The Court should not countenance such improper pleading tactics. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (holding that "allegations of conspiracy [that] are baseless and spun entirely of 'cynical delusion and fantasy'" cannot stand).

Even if the FAC plausibly alleged that Marriott knew that DeJesus was held (1) involuntarily and (2) illegally (and it does not), such allegations would not suggest that Marriott had a shared "goal" to deprive anyone—much less Plaintiff—

24

of *Brady* material. There are no allegations whatsoever tying Marriott to Plaintiff's criminal proceedings or post-conviction collateral proceedings, much less any decision about what information to disclose to Plaintiff in those proceedings—only vague allegations of a cover-up.

*Third,* Plaintiff argues that the Marriott LaGuardia served as a "black site" for the KCDAO on six other occasions in the month preceding DeJesus's confinement, citing to a Hotel Custody Log filed in an unrelated litigation. He claims that this log supports the inference that Marriott engaged in a "common scheme" to facilitate the KCDAO's conduct, because its facilitation was "extensive." Plaintiff Br. at 43–44. At most, however, the log reflects that Marriott rented other rooms to the KCDAO and does not in any way suggest the existence of an agreement to withhold *Brady/Giglio* information from Plaintiff. The main case on which Plaintiff relies concerned extreme and detailed facts relating to a common enterprise to commit burglaries and murder over a multiyear period. *See Halberstam v. Welch*, 705 F.2d 472, 486–88 (D.C. Cir. 1983) (finding conspiracy to engage in five-year-long enterprise where defendant committed burglaries and murder and amassed a fortune and co-conspirator, defendant's roommate, ran a back-office operation to support enterprise with full knowledge of defendant's criminal acts). Such criminal conduct is a far cry from a hotel company renting hotel rooms to a governmental agency on six occasions.

Notably, in the case that Plaintiff characterizes as holding that *Halberstam* is a "leading case" on civil "conspiracy liability," this Court rejected an argument that "civil conspiracy liability reaches any coconspirator conduct that 'foreseeably' results from the conspiracy." *Freeman ex rel. Est. of Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 81–82 (2d Cir. 2023). *See* Plaintiff Br. at 6, 43. Yet attempting to hold Marriott responsible for purportedly "foreseeable" results is exactly what Plaintiff is trying to do here—the FAC itself suggests, repeatedly, that Plaintiff's *Brady* violations were foreseeable to Marriott. FAC ¶¶ 122, 250, 314–16. This overly expansive theory of liability should be rejected by this Court (again). *See Freeman*, 57 F.4th at 82 ("To hold a defendant liable for a coconspirator's actions merely because they are foreseeable—even though wholly detached from the shared conspiratorial plan—would stretch the concept of civil conspiracy too far beyond its origin."). For these reasons, Plaintiff fails to plausibly allege joint action or a § 1983 conspiracy.

### B. Plaintiff Waived All Other State Action Arguments

Assuming the FAC fails to satisfy the joint action test, that should end the state action inquiry because Plaintiff waived all other state action arguments. In its order granting the motions to dismiss, the district court agreed with Marriott that the FAC did not satisfy either the public function or compulsion tests. SPA-12, 14–15. It also agreed with Marriott that § 1983 does not support aiding and abetting

26

liability—a theory that was originally pleaded in the FAC. *See* SPA-14 n.10; *see also, e.g.*, FAC ¶ 126. Plaintiff failed to challenge any of these findings his brief. He did not argue the public function or compulsion tests or aiding and abetting liability in opposition to Marriott's motion to dismiss, either. Therefore, Plaintiff has waived those arguments, and the Court need not consider them here. *See Loc. Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Pelella*, 350 F.3d 73, 87 (2d Cir. 2003) (failure to raise an issue on appeal is deemed a waiver); *Moates v. Barkley*, 147 F.3d 207, 209 (2d Cir. 1998) (holding that pursuant to Federal Rule of Appellate Procedure 28(a), which requires appellants to provide a clear statement of the issues on appeal in an opening brief, the Court will not decide issues not raised in the appellant's brief).

## II. The District Court's Order Dismissing Plaintiff's § 1983 Claims Against Marriott May Be Affirmed on Several Independent Grounds

Even if the FAC had sufficiently alleged that Marriott or its employees were state actors (and it does not), Plaintiff's claims against Marriott warrant dismissal on several other grounds, set forth below. Although the district court did not reach every one of these alternative grounds to dismiss, this Court "may affirm the judgment of the district court on any ground appearing in the record" including "on grounds different from those relied on by the court below." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997).

27

## A. Plaintiff Failed to Plausibly Allege that Marriott is Liable for the Actions of Unnamed Hotel "Managers" under *Monell*

Municipalities and other local governmental units may not be held liable under § 1983 on a *respondeat superior* theory. *See Monell*, 436 U.S. at 691; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). Instead, § 1983 liability attaches only if the plaintiff can show that the government's "policy or custom" caused the injury. *Monell*, 436 U.S. at 694. This rationale can apply to § 1983 claims brought against private employers for the acts of their employees. *See Rojas,* 924 F.2d at 408 ("Private employers are not liable under § 1983 for the constitutional torts of their employees . . . unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'" (quoting *Monell*, 436 U.S. at 691) (emphasis in original)).

The FAC purports to allege a standalone *Monell* claim against Marriott based on Marriott's alleged facilitation of the KCDAO's wrongdoing. FAC ¶¶ 296–316. "*Monell*," however, "does not provide a separate cause of action . . . . it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customers that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original). Therefore, for *any* of Plaintiff's § 1983 claims against Marriott to survive, Plaintiff must plausibly allege not only state action, but that an official policy or custom of Marriott's caused his purported injury. *See Roe v. City of Waterbury*, 542

F.3d 31, 36 (2d Cir. 2008) (elements of *Monell* liability are "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury"). Even if the FAC plausibly alleged state action as to Marriott (which it does not), it does not contain any allegations supporting such a policy or custom.

A policy or custom may be shown through (a) formal course of action officially promulgated by the municipality's governing authority or (b) the act of a person with policymaking authority for the municipality. *See Vives v. City of N.Y.,* 524 F.3d 346, 350 (2d Cir. 2008) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986)). It may also be shown through (c) a persistent and widespread practice of which constructive knowledge by policymaking officials may be implied, *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014), or (d) a failure by policy makers to properly train or supervise their subordinates, amounting to deliberate indifference to the possibility of constitutional violations, *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004). No matter the theory, a plaintiff asserting a *Monell* claim must allege facts supporting the reasonable inference that such policy or custom existed. *Montero*, 890 F.3d at 403–04; *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order).

Plaintiff attempts to argue (b), namely that Marriott is liable based on the acts of Marriott "policymakers." These "policymakers" are alleged to be "local

29

managers" of the Marriott LaGuardia hotel.  *See, e.g.*, Plaintiff Br. at 39 ("[I]f a Marriott policymaker takes part in a civil conspiracy, his or her participation in the conspiracy renders the entity for which he is she is a policymaker liable for resultant damages."); 40 (arguing that Marriott "local managers acted as final policymakers with respect to the decisions to facilitate the" KCDAO's illegal witness imprisonment practices).  For support, Plaintiff points to allegations that "local managers" at the Marriott LaGuardia Hotel were "wholly delegated final policymaking authority", that they were autonomous, that their decisions to rent hotel rooms to the KCDAO were never reviewed, and that they implemented a "policy" of facilitating the KCDAO's illegal witness imprisonment.  *Id.* at 39–40.

These allegations are plainly insufficient.  To impose *Monell* liability based on a policymaker's acts, a plaintiff "must show that the official had final policymaking power" and that the actions were "within that official's policymaking authority." *Roe*, 542 F.3d at 37 (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)) (cited by Plaintiff).  The relevant official "must be responsible under state law for making policy in that area of the municipality's business" and have "final authority to establish municipal policy *with respect to the action ordered*." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (quoting *Pembaur*, 475 U.S. at 481) (emphasis in original).

Here, the FAC pleads no facts describing what powers were supposedly delegated to these "local managers," how they were delegated, by whom, or how

30

those powers relate to any issue in this case. *See* FAC ¶ 297. Instead, the FAC alleges that the "local managers" (*i.e.,* employees at a single hotel) had discretion with respect to room rentals. That conclusory allegation is not sufficient. *See, e.g.*, *Montero*, 890 F.3d at 403 (holding that the mere assertion that a municipality has a custom or policy is insufficient in the absence of factual allegations tending to support such an inference); *Schwab v. Smalls*, 435 F. App'x 37, 40 (2d Cir. 2011) (summary order) (finding vague allegation that defendant possessed "'final discretionary decision making authority'" with regard to the challenged action was insufficient); *see also Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 303 (S.D.N.Y. 2015) (collecting district court cases dismissing complaints for failure to allege facts allowing a court to infer that the relevant actor was a final policymaker). Indeed, if this allegation *were* sufficient, then every hotel management company could be deemed to have a "policy" tied to any action taken by any hotel employee who had discretion to manage room rentals. That is not the law in this Circuit or anywhere.

Finally, even if the FAC adequately alleged that there was a corporate "policy" to facilitate illegal witness imprisonment (and it does not), the FAC fails to plausibly allege that any such policy caused Plaintiff's injuries. *See* FAC ¶ 315 (providing single conclusory allegation of proximate cause). Any decision to rent hotel rooms to the KCDAO and comply with the KCDAO's instructions with respect

31

to those rooms cannot reasonably be viewed as the "moving force" behind the constitutional violations alleged in this case, which are based on the *KCDAO's* purported *concealment* of DeJesus's hotel stay from Plaintiff. *Monell*, 436 U.S. at 694; *see also* FAC ¶¶ 81–116 (allegations repeatedly accusing the KCDAO, not Marriott, of violating obligation to disclose). Marriott is not alleged to have had any prosecutorial or other interest in these events or to have made any decision concerning whether to disclose DeJesus's stay to Plaintiff or to have influenced that decision. Indeed, the FAC does not even allege that Marriott knew who Plaintiff was, much less that he was facing trial. Therefore, the FAC completely fails to plausibly allege *Monell* liability.

### B. Plaintiff Failed to Plausibly Allege an Underlying Constitutional Violation

The Court may also affirm the district court's dismissal of Plaintiff's claims for failure to allege a constitutional violation. *See Roe*, 542 F.3d at 36 (holding that to prevail on a claim against a municipality under § 1983 and *Monell*, plaintiff must prove deprivation of a constitutional right).

The constitutional injury alleged here is that the KCDAO suppressed material that could have been used to impeach DeJesus's testimony in violation of *Brady/Giglio*, which deprived Plaintiff of his due process rights. *E.g.*, FAC ¶¶ 4, 77, 118–27, 139–48. To be clear, Marriott is not alleged to have had anything to do with Plaintiff's criminal trial or post-trial proceedings, or to have had any obligation to

32

disclose anything to him. Only the KCDAO is alleged to have had that obligation, and the alleged injury is only imputed to Marriott through Plaintiff's allegations that it conspired with the KCDA to facilitate the witness imprisonment, which cannot stand. *See supra* Parts I and II.A. Further, as the City separately argues, even if DeJesus was compelled to testify, that would not necessarily constitute favorable impeachment material at all. *See* Dkt. 41, Brief of Defendant-Appellee the City of New York ("City Br.") at 20–24. But even assuming it was, and further assuming that the KCDAO's failure to disclose the alleged impeachment material could somehow be imputed to Marriott, the FAC should be dismissed because that failure to disclose did not violate *Brady*.

Plaintiff devotes much of this appeal to challenging the district court's holding that the FAC fails to state a *Brady* claim because it does not specifically allege that DeJesus's testimony was false, only coerced. Plaintiff Br. at 30–37. He argues that *Brady* does not impose any such requirement, relying on caselaw from the Sixth and Seventh Circuits that support this proposition. Plaintiff Br. at 7, 32 (citing *Anderson v. City of Rockford*, 932 F.3d 494, 507 (7th Cir. 2019); *Jackson v. City of Cleveland*, 925 F.3d 793, 825 (6th Cir. 2019)).

Neither the Supreme Court nor this Court have expressly held that suppressed evidence that a witness's testimony was coerced *must* be false to constitute a *Brady* violation, but that is immaterial here. Even absent such a bright-line requirement,

33

the FAC still failed to allege a *Brady* violation because it does not plausibly allege that any decision to withhold DeJesus's stay from Plaintiff would have prejudiced the outcome of Plaintiff's criminal trial.

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *United States v. Hunter*, 32 F.4th 22, 30–31 (2d Cir. 2022) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). The same factors are required to prove a violation of *Giglio v. United States*, 405 U.S. 150 (1972), which extended *Brady* to impeachment material. *See generally United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001) (discussing *Brady* factors and extension of *Brady* to impeachment material in *Giglio*). To establish prejudice (also referred to as materiality), a plaintiff must plausibly allege "'a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" *Hunter*, 32 F.4th at 31 (quoting *Turner v. United States*, 582 U.S. 313, 324 (2017)); *see also Armstrong v. Ashley*, 60 F.4th 262, 270–71 (5th Cir. 2023) (affirming dismissal of *Brady*-based § 1983 claims at the pleading stage for failure to plausibly allege the elements of a *Brady* violation).

The FAC does not satisfy that standard. It alleges that the prosecution presented two witnesses at trial—Blutcher and DeJesus—and asserts that because

34

Blutcher had a criminal history and outstanding warrants, DeJesus became the prosecution's "star witness." *Id.* ¶¶ 70–71. But the FAC does not allege the substance of *either* witness's testimony, explain why DeJesus was supposedly the prosecution's "star witness," or otherwise plead facts showing why impeachment of DeJesus would have created a reasonable probability of a different verdict. *See United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (explaining that generally, impeachment evidence is material if the witness at issue provided the only evidence linking the defendant to the crime and "a new trial is generally not required when the testimony of the witness is 'corroborated by other testimony'" (quoting *United States v. Petrillo*, 821 F.2d 85, 89 (2d Cir. 1987))); *Hunter*, 32 F.4th at 32 (concluding that withheld impeachment evidence was not material "in light of the entire record," including additional evidence supporting the verdict).

Plaintiff also fails to meaningfully address the fact that another witness, Blutcher, the surviving victim of the shooting, testified against him. FAC ¶¶ 20, 70. He focuses instead on allegations that the prosecutor implied that his pre-trial meetings with DeJesus were "above-board" and claimed during summation that DeJesus had no motive to lie. Plaintiff Br. at 36–37.

The authorities on which Plaintiff relies do not support his argument that the FAC plausibly alleges *Brady* materiality. Two of Plaintiff's cited cases involved the prosecution's knowing use of false testimony or false evidence concerning a central

35

witness or critical issue at trial. *See Drake v. Portuondo*, 553 F.3d 230, 245 (2d Cir. 2009) (prosecution knowingly presented false expert testimony on "the single issue at trial—[defendant]'s intent"—where the jury's assessment of the expert's credibility "may well have been determinative"); *United States v. Vozzella*, 124 F.3d 389, 392 (2d Cir. 1997) (government knowingly introduced evidence "so highly misleading as to amount to falsity" that went directly to proving the charged conspiracy). In both cases, the challenged evidence bore directly on a central issue at trial, and the court found a reasonable likelihood that exposing the falsity would have affected the verdict. Here, by contrast, the FAC suggests only that the concealed evidence would have been useful for impeachment at trial. Under these circumstances, the FAC fails to allege that the coercion of DeJesus's testimony alone was prejudicial and *Drake* and *Vozzella* do not suggest otherwise.

*Su v. Filion* likewise does not aid Plaintiff. There, the Second Circuit found prejudice only after concluding that the prosecution's chief witness falsely denied the existence of a cooperation agreement, and that the convictions "depended significantly on [that witness's] testimony," and that "the other evidence against defendant was not overwhelming." 335 F.3d 119, 129–30 (2d Cir. 2003). Here, by contrast, the FAC merely labels DeJesus as the prosecution's "star witness." FAC ¶¶ 3, 50, 71. It does not describe the substance of either DeJesus's or Blutcher's testimony, explain why DeJesus's testimony was critical to the prosecution's case,

36

or otherwise plead facts showing that disclosure of the alleged impeachment material would likely have altered the verdict. *See Payne*, 63 F.3d at 1210; *Hunter*, 32 F.4th at 32. For these reasons, the FAC fails to plausibly allege the prejudice necessary to establish *Brady* materiality.

### C. Plaintiff's Claims Are Barred by *Heck v. Humphrey*

Although the district court declined to address this issue, *Heck v. Humphrey* independently requires dismissal of Plaintiff's § 1983 claims. The Second Circuit has recognized that *Heck* "precludes the use of § 1983 suits for damages that necessarily have the effect of challenging existing state or federal criminal convictions." *Poventud v. City of New York*, 750 F.3d 121, 124 (2d Cir. 2014) (en banc). Therefore, before pursuing damages under § 1983, a plaintiff challenging the validity of his conviction must first obtain a "favorable termination" of that conviction. *Id.* at 130–31. Plaintiff does not dispute that his conviction has never been invalidated. Nor does he dispute that he spent years in custody and pursued federal habeas relief during that time. Instead, he argues that *Heck* does not apply because he is no longer in custody and cannot seek federal *habeas* relief. He also argues that he did not discover the basis for his *Brady* claims until after his release. Plaintiff Br. at 51.

In its brief, the City of New York argues that *Heck* bars Plaintiff's claim because (1) there is no exception to *Heck* allowing plaintiffs to collaterally attack

37

their convictions under § 1983 when habeas relief is unavailable, and (2) even if such an exception exists, Plaintiff would not qualify. *See* City Br. at 27–38. Marriott agrees with that position, for the following reasons summarized below.

Neither the Supreme Court nor the Second Circuit has adopted the categorical "non-custody exception" that Plaintiff advocates. *See, e.g.*, *Muhammad v. Close*, 540 U.S. 749, 752 n.2 (2004) (acknowledging that "[m]embers of the Court have expressed the view that unavailability of habeas for other reasons may also dispense with the *Heck* requirement[,]" but expressly declining to resolve the issue); *Poventud*, 750 F.3d at 125 n.1 (declining to address whether a plaintiff who is no longer in custody may pursue a federal remedy under § 1983); *Teichmann*, 769 F.3d at 825, 827 (declining to decide whether to recognize an exception for a plaintiff who was no longer in custody when he filed suit). In a separate concurrence in *Teichmann*, Judge Livingston explained that this Court's precedents recognize, at most, a "narrow" exception where "habeas was *never* reasonably available to the plaintiff through no lack of diligence on his part"—that is, where § 1983 was "a diligent plaintiff's only opportunity to challenge his conviction in a federal forum." *Id.* at 827–28 (Livingston, J., concurring) (emphasis in original).

Even if this Court were to recognize the narrow exception discussed in *Teichmann*, Plaintiff fails to justify its application here. Unlike many of the district court decisions on which Plaintiff relies (*see* Plaintiff Br. at 52–53 nn. 13–14), this

38

is not a case involving a plaintiff who never had a realistic opportunity to pursue federal habeas relief, or whose period of custody was so brief that meaningful habeas review was effectively unavailable. *See, e.g.*, *Artec Constr. & Dev. Corp. v. City of New York*, No. 15 Civ. 9494, 2017 WL 5891817, at *5 (S.D.N.Y. Nov. 28, 2017) (corporate plaintiff that "was never, and is not now, in state custody" and therefore "could never challenge the propriety of its conviction through a petition for a writ of *habeas corpus*"); *Jean-Laurent v. Cornelius*, No. 15-CV-2217, 2017 WL 933100, at *6 n.11 (S.D.N.Y. Mar. 8, 2017) (declining to apply *Heck* because the plaintiff "'did not have the practical ability to pursue habeas relief' from his fifteen day sentence" (quoting *Sanders v. Williams*, No. 14-cv-7219 (PAC), 2015 WL 7963135, at *5 (S.D.N.Y. Nov. 10, 2015))).

Plaintiff acknowledges that he spent years in custody and pursued federal habeas relief during that period. *See* FAC ¶ 92. His theory is that he did not discover the alleged *Brady* material until after his release, when habeas relief was no longer available. But, as the City points out, accepting this theory would extend the "exception" to any former prisoner who later discovers a new basis for attacking an outstanding conviction, which the law does not support. City Br. at 35–38. Moreover, even after allegedly discovering the *Brady* material in his case, Plaintiff did not seek to invalidate his still-outstanding conviction through available state collateral proceedings before filing this § 1983 damages action. New York law

39

continues to provide a mechanism for presenting his newly discovered claim through a motion under CPL § 440.10.[6] No case cited by Plaintiff stretches any "exception" to *Heck* so far. Because Maddix's conviction has never been invalidated, *Heck* bars his claims.

### D. Plaintiff's Claims are Time-Barred

Assuming *arguendo* that Plaintiff's claims are not barred by *Heck* (they are), and further assuming that Plaintiff's injuries could be imputed to Marriott (they cannot), the FAC on its face establishes that they are untimely and should be dismissed. *See Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.") (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).

To be clear, Plaintiff has not disputed that his claims are untimely. Nor could he. The statute of limitations for § 1983 claims brought in federal court in New York is three years. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) ("In

---

[6] New York law permits a defendant to seek relief under CPL § 440.10 "at any time after the entry of a judgment," even after completion of the sentence. *People v. Pichardo*, 1 N.Y.3d 126, 130 n.4 (2003). The New York Court of Appeals has likewise recognized that a defendant is "permitted by statute to bring a subsequent CPL article 440 motion." *People v. Wright*, 27 N.Y.3d 516, 521 (2016). Consistent with those principles, the Second Circuit has recognized that federal courts cannot assume a defendant is foreclosed from bringing a new § 440.10 motion because New York law may still permit further collateral review. *See Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990).

section 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions[.]'" (quoting *Owens v. Okure*, 488 U.S. 235, 249–50 1989))). Plaintiff is correct that generally, federal law governs when a § 1983 claim accrues, and this Court has ruled that accrual occurs when the Plaintiff "knows or has reason to know of the injury which is the basis of his action." *Id.* at 80 (internal quotation marks omitted); *see also Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980). For § 1983 damages claims that implicate *Heck*, however, the claim generally does not accrue until the relevant conviction has been invalidated. *Heck*, 512 U.S. at 489–90. Therefore, if *Heck* applies, Plaintiff's claims have not even accrued, because his conviction still stands.

This Court has not addressed how these accrual principles would apply to a § 1983 damages claim implicating *Heck* that is allowed to proceed, even though the underlying criminal conviction has not been invalidated. *See Opperisano v. Jones*, 286 F. Supp. 3d 450, 463 (E.D.N.Y. 2018). But even if the Court were to assume that Plaintiff's release from custody in 2012 lifted the *Heck* bar, that would mean that the statute of limitations expired in 2015. *See id.* at 463–64 ("[A]ccrual under the *Jenkins/Leather* exception should begin when the section 1983 claim becomes available—once habeas is no longer available, despite due diligence.").

Plaintiff seeks "to relieve [himself] from the bar of a statute of limitations," *Pearl*, 296 F.3d at 80, by claiming that the federal discovery rule delayed accrual of

41

his claims because he did not discover the *Brady/Giglio* material until 2024.  Plaintiff Br. at 56–57; FAC ¶ 103.  Plaintiff has also suggested that any accrual should be tolled through equitable estoppel.  Plaintiff Br. at 47, 56.  Both arguments are unavailing.

### i.      The Diligence-Discovery Rule

Under the federal diligence-discovery rule, a claim accrues only when "the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause."  *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998).  It can apply in cases where "the government [allegedly] conceals the acts giving rise to the plaintiff's claim, or where [the] plaintiff would reasonably have had difficulty discerning the fact or cause of the injury at the time it was inflicted." *Id*.; *see also Merck & Co. v. Reynolds,* 559 U.S. 633, 644 (2010) (explaining that the discovery rule arose because the "Court long ago recognized that something different was needed in the case of fraud, where a defendant's deceptive conduct may prevent a plaintiff from even knowing that he or she has been defrauded").

As relevant here, the discovery rule requires "'knowledge of, or knowledge that could lead to, the basic facts of the injury[.]'" *Kronisch*, 150 F.3d at 121 (quoting *Guccione v. United States*, 670 F. Supp. 527, 536 (S.D.N.Y. 1987)).  Thus, "a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of the injury and causation to protect himself by seeking legal advice."  *Id.* (quoting

42

*Guccione*, 670 F. Supp. at 536). Importantly, while "[a] claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim, . . . *such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence*." *Kronisch*, 150 F.3d at 121 (citing *Hobson v. Wilson*, 737 F.2d 1, 35 & n.107 (D.C. Cir. 1984)) (emphasis added).

Here, even if Plaintiff did not discover his constitutional injury until December 2024, the FAC itself demonstrates that he could have (with reasonable diligence) discovered it over ten years ago based on public information describing the same misconduct by the same alleged wrongdoers. Publicly available information such as news reports can be sufficient to trigger a duty to investigate and, in turn, establish when a reasonably diligent plaintiff should have discovered the critical facts of his claim. *See Hayden v. Koons*, No. 25-498-CV, 2026 WL 2091681, at *6–8 (2d Cir. July 21, 2026) (applying federal discovery rule and finding copyright claims time barred based on "widespread news coverage, international fame, and long-lasting popularity" revealing alleged infringement and noting that these "are just some of many factors to consider"); *Gilvar v. United States*, 468 F. App'x 31, 32–33 (2d Cir. 2012) (summary order) (holding public information related to anthrax attack was sufficient to form a reasonable suspicion that the government was connected to those attacks for FTCA claim (citing *Kronisch*, 150 F.3d at 122)); *see also Pipitone v. City of New York*, 57 F. Supp. 3d 173, 188 (E.D.N.Y. 2014)

("News reports, if sufficiently probative and widely publicized, can trigger accrual, or at least require potential plaintiffs to undertake a reasonably diligent investigation." (citing *Donahue v. United States*, 634 F.3d 615, 625–27 (1st Cir. 2011))).

This Court has not addressed the extent to which public information may trigger a duty to investigate in a § 1983 case. Nevertheless, because the FAC invokes fraudulent concealment as an excuse for Plaintiff's untimeliness, Plaintiff Br. at 47, the Court's cases addressing the discovery rule (or state law equivalents) and in the context of fraud claims are instructive. *See Koons*, 2026 WL 2091681, at *6 n.7 (explaining that in "defining the discovery rule" in other "contexts," courts will look to how "other statutes of limitations" are treated and applying federal securities fraud precedent to copyright law). Under that line of authority, public reports may trigger a duty to investigate, considering the reports' reach, audience, content, and specificity. *Compare Meyer v. Seidel*, 89 F.4th 117, 135 (2d Cir. 2023) (explaining the court will consider (a) "whether news reports are sufficiently widespread that we can infer that a reasonable plaintiff would be aware of [them]" and (b) "their content"—i.e., whether the information relates directly to the alleged misrepresentations and omissions (citing *Staehr*, 547 F.3d at 427)), *with Hayden v. Koons*, No. 25-498-cv, 2026 WL 2091681, at *6 & n.6 (2d Cir. July 21, 2026) (explaining, in a copyright case, that the Court will "often consider inquiry notice

44

and storm warnings in tandem, and in assessing the sufficiency of storm warnings we closely scrutinize relevant news reports, the scope of publication, the typical audience, and the level of detail included").

Here, even assuming the diligence-discovery rule applies, the FAC's own allegations demonstrate that Plaintiff was on inquiry notice of his claims in 2011 or earlier and did not exercise the required due diligence. The FAC admits that Plaintiff knew the identities of ADA Reeves and DA Hynes and cites repeatedly to publicly available reports—published after Plaintiff was released from custody—describing the same kinds of misconduct by those same prosecutors that is alleged here, including suppression of *Brady* material. *See, e.g.*, FAC ¶¶ 19 n. 1 (citing New York Times article reporting that ADA Reeves withheld exculpatory statement from defense); 22 n.2 (2015) (NBC NY news report that Reeves failed to disclose *Brady* material resulting in a mistrial); 163 (2011 CBS News report of KCDA paying false witness); 162 n.23 (citing 100-page report published in 2020 by the KCDA's Conviction Review Unit); 209–215 n.26 (alleging that a 2012 story about similar alleged violations by the KCDA was "reported in virtually all major New York newspapers"). The FAC also refers to other publicly-filed lawsuits that specifically discuss witness coercion and/or the Hotel Custody Program employed by the KCDA, all of which were filed well over three years before Plaintiff filed this lawsuit in 2025. *See supra* n.2. These lawsuits included the 2011 *Collins* litigation referenced

45

above, which was covered in news articles published over ten years ago that also discussed the Hotel Custody Program. *Id.* ¶ 154 n.19; *see also, e.g.*, Mosi Secret, *Brooklyn Prosecutor's Office is Accused of Detaining Trial Witnesses*, N.Y. Times (May 29, 2013), https://www.nytimes.com/2013/05/30/nyregion/brooklyn-prosecutors-office-accused-of-detaining-trial-witnesses.html.

This publicly available material was certainly enough to plausibly raise (at minimum) a "suspicion[]" that "'[gave] rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence.'" *Abdel-Fakhara v. Vermont*, No. 22-2543, 2023 WL 3486236, at *1 (2d Cir. May 17, 2023) (summary order) (quoting *Kronisch*, 150 F.3d at 121); *see also Pipitone*, 57 F. Supp. 3d at 189 (holding news accounts suggesting that crime family murdered plaintiffs' family members for cooperating with police based on law enforcement leak placed plaintiffs on inquiry notice as to claims against the City). Yet the FAC does not allege that Plaintiff did anything to investigate his claims here. The FAC does not allege that Plaintiff even filed a public records request for *Brady* material as it claims that other incarcerated individuals have (successfully) done. FAC ¶¶ 278–80. Moreover, the fact that the unnamed researcher uncovered the evidence of DeJesus's stay here, *id.* ¶ 103, establishes that a reasonably diligent plaintiff would have been able to obtain the same information. For these reasons, even under the diligence-discovery rule, Plaintiff's claims are untimely.

### ii. Equitable Estoppel Does Not Apply

As an initial matter, Plaintiff effectively abandons his argument that equitable estoppel precludes Marriott's statute of limitations defense. He mentions it in one header and cites a case for the governing legal standard on equitable estoppel but does not argue it substantively. Plaintiff Br. at 45–47. At best, he implies that the Defendants (collectively) should be estopped based on misrepresentations that were made to him, *id.* at 46, but focuses on whether equitable estoppel may apply to the *Heck* bar and whether Plaintiff's claims were timely under the diligence-discovery rule, *id.* at 47–58. He makes *no* substantive argument about why equitable estoppel applies to Marriott's statute of limitations defense. By failing to sufficiently address this argument in this brief, Plaintiff has abandoned it. *See, e.g.*, *In re Philip Morris Int'l Inc.*, 89 F.4th 408, 429–30 (2d Cir. 2023) (holding that plaintiffs "abandoned" certain arguments because they "merely mention[ed]" them "in [such] a perfunctory manner, unaccompanied by some effort at developed argumentation," and failed to explain how the district court erred (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regul. Dist.*, 673 F.3d 84, 107 (2d Cir. 2012))).

Regardless, Marriott is not prevented from raising the statute of limitations based on any theory of equitable estoppel that could apply. Tolling of a statute of limitations based on equitable estoppel "is only appropriate in rare and exceptional

47

circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (cleaned up). There are no such exceptional circumstances present here that warrant application of the doctrine.

Plaintiff cites *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001), which states that equitable estoppel applies where "1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment." *Id.*; *see also Ellul*, 774 F.3d at 802 ("'[E]quitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit.'" (quoting *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 49–50 (2d Cir. 1985))).

Here, however, the FAC does not allege that Marriott made any misrepresentation, much less one on which Plaintiff relied. Nor does the FAC allege that Marriott engaged in any conduct that induced Plaintiff to delay filing suit after he allegedly discovered his claims. Instead, Plaintiff relies on the alleged suppression of *Brady* material that preceded his discovery of the asserted claims. *See, e.g.*, FAC ¶¶ 81–116. Those allegations do not establish a basis for equitable estoppel. *See Ellul*, 774 F.3d at 802 (holding that equitable estoppel did not apply

48

where the plaintiffs "[did] not assert that defendants made any misrepresentations that caused them to delay bringing this lawsuit once the facts became or should have become known to them").

To the extent Plaintiff relies on fraudulent concealment to toll the statute of limitations, that theory likewise fails. To toll the statute of limitations based on fraudulent concealment, Plaintiff must show: "'(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled.'" *Koch v. Christie's Intern. PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999)). This Court recently held that fraudulent concealment must be pleaded with particularity. *See Phhhoto Inc. v. Meta Platforms, Inc.*, 123 F.4th 592, 616 (2d Cir. 2024) (holding that the plaintiff "must plead elements of fraudulent concealment with particularity, in accordance with the heightened pleading standards set forth in Rule 9(b) of the Federal Rules of Civil Procedure." (citing *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983))).

Starting with element (3), Plaintiff cannot satisfy the diligence requirement. For the reasons discussed *supra*, Plaintiff has not alleged that he exercised reasonable diligence in discovering his claims. *See Koch*, 699 F.3d at 157 (rejecting

49

fraudulent concealment tolling where the plaintiff failed to exercise reasonable diligence after receiving information suggesting wrongdoing).

Even if the FAC provided a basis for Plaintiff to show that he exercised due diligence with respect to his claims (and it does not), Plaintiff cannot satisfy element (1) of this equitable doctrine. The FAC does not allege that Marriott concealed anything from Plaintiff—as noted previously, the FAC does not even allege that Marriott knew who Plaintiff was or that he was on trial[7]; instead, it vaguely alleges a conspiracy to cover-up the wrongdoing related to the KCDAO's conduct.

Further, as Plaintiff's argument is grounded in allegations of concealment and coverups, Plaintiff is required to allege some type of "fiduciary relationship giving rise to" an "obligation to inform the plaintiff of the facts underlying the claim." *Horn v. Politopoulos*, 628 F. App'x 33, 34–35 (2d Cir. 2015) (summary order). But the FAC does not—and cannot—allege any such relationship between Marriott and Plaintiff. In fact, only ADA Reeves is alleged to have had such a duty. FAC ¶ 105. Plaintiff provides no basis for imputing a prosecutorial obligation to Marriott.

---

[7] Plaintiff argues that the Marriott knew who Maddix was and that he was a criminal defendant from the custody reservation request form that Plaintiff now claims Marriott created or approved. Plaintiff Br. at 41. As discussed *supra*, however, the FAC does *not* allege that Marriott created, approved, or saw this document. The only document tying Marriott to DeJesus is the room reservation letter (A-182) (and even that document just refers to the custody number, which is referred to in a separate document mentioning Plaintiff that is not addressed to Marriott).

50

### III. Plaintiff's State Law Claim Against Marriott Should be Dismissed

Plaintiff does not challenge, and thus concedes, that assuming the § 1983 claims against Marriott do not survive, the district court appropriately declined to exercise supplemental jurisdiction over his state law claim against Marriott. Plaintiff Br. at 44. Assuming the Court agrees that no federal cause of action against Marriott exists, then it should affirm the district court's dismissal of Plaintiff's state law claim as well.

### CONCLUSION

For the foregoing reasons, Marriott respectfully requests that the district court's Order, to the extent it dismissed all claims against Marriott, be affirmed.

Dated:      August 11, 2026
New York, NY

Respectfully submitted,


**VENABLE LLP**

/s/ Konstantinos D. Katsiris

Konstantinos D. Katsiris, Esq.
Emily Seiderman West
151 West 42nd Street, 49th Floor
New York, New York 10036
(212) 370-6272
(212) 503-9816
kdkatsiris@venable.com
eawest@venable.com

*Counsel for Defendants-Appellees*
*Marriott Hotel Services, Inc. and*
*Marriott International, Inc.*

51

## CERTIFICATE OF COMPLIANCE

This brief by Defendants-Appellees Marriott Hotel Services, Inc. and Marriott International, Inc. complies with the type-volume limitation of Fed. R. App. P. 32 and L.R. 32.1(a)(4) because it contains 12,632 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

/s/ Konstantinos D. Katsiris

Konstantinos D. Katsiris, Esq.
Emily Seiderman West
151 West 42nd Street, 49th Floor
New York, New York 10036
(212) 370-6272
(212) 503-9816
(212) 218-2578
kdkatsiris@venable.com
eawest@venable.com

*Counsel for Defendants-Appellees
Marriott Hotel Services, Inc. and
Marriott International, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed on August 11, 2026 with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Konstantinos D. Katsiris

Konstantinos D. Katsiris, Esq.
Emily Seiderman West
151 West 42nd Street, 49th Floor
New York, New York 10036
(212) 370-6272
(212) 503-9816
(212) 218-2578
kdkatsiris@venable.com
eawest@venable.com

*Counsel for Defendants-Appellees*
*Marriott Hotel Services, Inc. and*
*Marriott International, Inc.*