# 26-1246-cv

## United States Court of Appeals

*for the*

## Second Circuit

WILLIE MADDIX,

*Plaintiff-Appellant,*

– v. –

CITY OF NEW YORK, MARRIOTT HOTEL SERVICES, INC., MARRIOTT INTERNATIONAL, INC., d/b/a JW Marriott Essex House Hotel,

*Defendants-Appellees,*

KYLE REEVES,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

# REPLY BRIEF FOR PLAINTIFF-APPELLANT

ANDREW M. STENGEL
THE LAW FIRM OF ANDREW M. STENGEL
*Attorneys for Plaintiff-Appellant*
11 Broadway, Suite 715
New York, New York 10004
(212) 634-9222

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (395999)

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

POINT I

DEFENDANTS WAIVED THEIR ARGUMENT THAT MADDIX FAILED TO PLEAD FACTS FROM WHICH THE MATERIALITY OF DEJESUS'S TRIAL TESTIMONY COULD BE ASSESSED AND, IN ANY EVENT, MADDIX'S COMPLAINT AND MATERIAL INTEGRAL TO THE COMPLAINT DETAILED THE TRIAL EVIDENCE AND ESTABLISHED THE MATERIALITY OF THE *BRADY* MATERIAL ........ 6

POINT II

DEFENDANTS IGNORE FACTUAL ISSUES PRECLUDING RESOLUTION OF THEIR *HECK v. HUMPHREY* AND STATUTE OF LIMITATIONS DEFENSES ........ 13

A. Defendants' Waived Their Meritless Claim That Maddix's 1999 Habeas Proceeding, Where Defendants Precluded Him From Raising His Brady/Giglio Claims, Precludes Him From Invoking The Heck Non-Custody Exception ........ 18

B. Maddix Was Not Required To Exhaust State Remedies Prior To Bringing His §1983 Action ........ 22

C. Media Coverage Of The KCDAO's Misconduct, 20 Years After Maddix Was Convicted, Does Nullify His Entitlement To The Diligence-Discovery Rule ........ 23

POINT III

MADDIX PLAUSIBLY ALLEGES MARRIOTT POLICYMAKERS ENGAGED IN A CIVIL CONSPIRACY WITH THE CITY TO DEPRIVE HIM OF BRADY AND GIGLIO MATERIAL, AND TO COVERUP THAT MISCONDUCT ........ 25

CONCLUSION ........ 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012)....................7

*Bensky v. Indyke*,
743 F. Supp. 3d 586 (S.D.N.Y. 2024)....................15

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....................4, 8

*Clark v. Hanley*,
89 F.4th 78 (2d Cir. 2023)....................3

*Colvin v. LeBlanc*,
2 F.4th 494 (5th Cir. 2021)....................18

*Corniel-Rodriguez v. Immigr. & Naturalization Serv.*,
532 F.2d 301 (2d Cir. 1976)....................21

*Dardana Ltd. v. Yuganskneftegaz*,
317 F.3d 202 (2d Cir. 2003)....................7

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010)....................8

*Douglas v. Workman*,
560 F.3d 1156 (10th Cir. 2009)....................21

*Freeman v. HSBC Holdings PLC*,
57 F.4th 66 (2d Cir. 2023)....................29

*Fuentes v. Griffin*,
829 F.3d 233 (2d Cir. 2016)....................10

*Gaia House Mezz LLC v. State St. Bank & Tr. Co.*,
720 F.3d 84 (2d Cir. 2013)....................16

*Garcia Pinach v. Bondi*,
147 F.4th 117 (2d Cir. 2025)....................19

*Glossip v. Oklahoma*,
604 U.S. 226 (2025)....................12

*Goldman v. Bequai*,
19 F.3d 666 (D.C. Cir. 1994) .......... 14-15

*Greathouse v. Meddaugh*,
2023 WL 5439456 (2d Cir. 2023) .......... 18

*Hebrard v. Nofziger*,
90 F.4th 1000 (9th Cir. 2024) .......... 3, 17, 18

*Heck v. Humphrey*,
512 U.S. 477 (1994) .......... *passim*

*Indoafric Exports Priv. Co. v. Citibank, N.A.*,
696 F. App'x 551 (2d Cir. 2017) .......... 16

*Jackson v. City of Cleveland*,
64 F.4th 736 (6th Cir. 2023), *reh'g denied*,
2023 WL 3806460 (6th Cir. May 10, 2023) .......... 16

*Jenkins v. Artuz*,
294 F.3d 284 (2d Cir. 2002) .......... 12

*Jenkins v. Haubert*,
179 F.3d 19 (2d Cir. 1999) .......... 20, 22

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
274 F.3d 706 (2d Cir. 2001) .......... 14

*Kramer v. Vill. of N. Fond du Lac*,
384 F.3d 856 (7th Cir. 2004) .......... 18

*Kronisch v. United States*,
150 F.3d 112 (2d Cir. 1998) .......... 14

*Kyles v. Whitley,*
514 U.S. 419 (1995) .......... 9

*Leather v. Eyck*,
180 F.3d 420 (2d Cir. 1999) .......... 22

*McIntyre v. United States,*
367 F.3d 38 (1st Cir. 2004) .......... 24

*Muhammad v. Close*,
540 U.S. 749 (2004) .......... 18

*Music Royalty Consulting, Inc. v. Reservoir Media Mgmt., Inc.*,
2019 WL 6335261 (S.D.N.Y. Oct. 31, 2019) ....................................................15

*New York, by James v. Niagara-Wheatfield Cent. Sch. Dist.*,
119 F.4th 270 (2d Cir. 2024)..............................................................................7

*O'Hara v. City of New York*,
568 F. Supp. 3d 241 (E.D.N.Y. 2021)................................................................28

*Patsy v. Florida Bd. of Regents*,
457 U.S. 496 (1982) ..........................................................................................22

*Pearl v. City of Long Beach,*
296 F.3d 76 (2d Cir. 2002)................................................................................14

*People v. Arocho*,
85 Misc.2d 116 (Sup. Ct. New York Co. 1976)..................................................11

*People v. Russ*,
79 N.Y.2d 173 (1992) ........................................................................................11

*Pipitone v. City of New York*,
57 F. Supp. 3d 173 (E.D.N.Y. 2014)..................................................................24

*Poventud v. City of New York*,
750 F.3d 121 (2d Cir. 2014)..............................................................................20

*Proffitt v. Ridgway*,
279 F.3d 503 (7th Cir. 2002)..............................................................................28

*R. H. Stearns Co. v. United States*,
291 U.S. 54 (1934) ............................................................................................21

*Roe v. City of Waterbury*,
542 F.3d 31 (2d Cir. 2008)................................................................................25

*Saint-Jean v. Emigrant Mortg. Co.*,
129 F.4th 124 (2d Cir. 2025), *cert. denied,* 146 S. Ct. 1501 (2026).....................14

*Sherman v. Abengoa, S.A.*,
156 F.4th 152 (2d Cir. 2025)...........................................................................6, 7

*Smith v. Cain*,
565 U.S. 73 (2012) ..............................................................................................9

*Stalter v. County of Orange*,
2016 WL 8711397 (S.D.N.Y. Aug. 5, 2016) .......................................................26

*Steidl v. Fermon*,
494 F.3d 623 (7th Cir. 2007)................................................................ 13, 16

*Su v. Filion*,
335 F.3d 119 (2d Cir. 2003).........................................................................5

*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015)...........................................................................7

*Tardd v. Brookhaven Nat. Lab'y*,
407 F. Supp. 2d 404 (E.D.N.Y. 2006).........................................................15

*Teichmann v. New York*,
769 F.3d 821 (2d Cir. 2014).................................................................. 4, 18, 19

*United States v. Gleason*,
616 F.2d 2 (2d Cir 1979) .............................................................................29

*United States v. Khalupsky*,
5 F.4th 279 (2d Cir. 2021).............................................................................29

*United States v. Rooney*,
866 F.2d 28 (2d Cir. 1989)....................................................................... 28-29

*Wall v. Constr. & Gen. Laborers' Union, Local 230*,
224 F.3d 168 (2d Cir. 2000)..........................................................................14

*Wearry v. Cain*,
136 S. Ct. 1002 (2016) ..................................................................................9

*Wiggins v. Mellia*,
2023 WL 6222303 (2d Cir. Sept. 26, 2023) ........................................... 19, 22

*Williams v. Citigroup Inc.*,
659 F.3d 208 (2d Cir. 2011)..........................................................................13

*Wilson v. Midland County*,
146 S.Ct. 1858 (2026) ..................................................................................18

**Statutes & Other Authorities:**

42 U.S.C. § 1983 ...................................................................................... *passim*

Fed.R.Civ.P. 8..............................................................................................26

Fed.R.Civ.P. 12(b)(6) .......................................................................... 3, 8, 14

Fed.R.Evid. 201(c)(2) .......... 9
Penal Law 135.00 .......... 2
Penal Law 135.05 .......... 2
Penal Law 135.20 .......... 2
Penal Law 265.03 (McKinney's 1994) .......... 10

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT

WILLIE MADDIX,

Plaintiff-Appellant,

-against-

THE CITY OF NEW YORK, MARRIOTT HOTEL SERVICES, INC., and MARRIOTT INTERNATIONAL, INC.,

Defendants-Appellees.

Docket No. 26-1246-cv

# PLAINTIFF-APPELLANT'S REPLY BRIEF

## INTRODUCTION

Both the City and Marriott *concede* the district court erred in ruling that, to plead a *Brady* claim, Maddix was required to allege the prosecution's secret arrest and coercion of its star witness resulted in the witness's false testimony. *See* Brief for Appellee the City of New York City ("City's Brief") at p. 13 (Docket No. 41.1) ("Although the District Court's opinion sometimes suggests that Maddix failed to plead the separate 'element' of false testimony ... false testimony is not an element

of a *Brady* claim"); Brief for Defendants-Appellees Marriott Hotel Services, Inc., Marriott International, Inc., D/B/A/ JW Marriott Essex House Hotel ("Marriott's Brief") at p. 33 (Docket No. 44.1) ("Neither the Supreme Court nor this Court have expressly held that suppressed evidence that a witness's testimony was coerced *must* be false to constitute a *Brady* violation[.]")[1]

The City also concedes its "use of hotel custody was improper," City Brief at p. 15, and neither the City nor Marriott offer any explanation for the existence of this flagrantly illegal program through which witnesses were systematically deceived, deprived of their right to counsel and court process, kidnapped, and confined under restrictions not even present on Rikers Island. *See* Brief And Special Appendix for Plaintiff-Appellant ("Maddix's Brief) at pp. 10-18, and 42 (Docket No. 32.1).[2]

---

[1] Defendants also abandon their arguments in the court below that prosecutorial immunity and the *Rooker-Feldman* doctrine preclude Maddix's *Monell* claim. *See e.g.* City's Brief at p. 11 n. 3 ("[T]he City will not defend [the district court's] alternative holding" that prosecutorial immunity bars Maddix's *Monell* claim).

[2] The witnesses were *literally* kidnapped. *See* New York Penal Law § 135.20 (Kidnapping in the second degree) ("A person is guilty of kidnapping in the second degree when he abducts another person."); Penal Law 135.00 ("Abduct" means to restrain a person with intent to prevent his liberation by secreting or holding him in a place where he is not likely to be found); Penal Law 135.05 (Unlawful confinement in the second degree) (liability ensues where one "restrains another person.") Penal Law 135.00 ("'restrain' means to restrict a person's movements intentionally and unlawfully in such manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him ... in the place ... to which he has been moved, without consent and with knowledge that the restriction is unlawful. A person is so moved or confined 'without consent' when such is accomplished by deception.")

Given these concessions, the only issue properly before this Court is whether Maddix's lawsuit is barred under Defendants' *Heck v. Humphrey*, 512 U.S. 477 (1994) and statute of limitations defenses. *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024) ("*Heck* is an affirmative defense that may be waived or forfeited.") (Citation omitted). But as Maddix invoked equitable estoppel with respect to both defenses —based on Defendants' misrepresentations, 30-year coverup, and Maddix's injuries from relying on those misrepresentations— and the diligence-discovery rule with respect to the statute of limitations defense, those issues cannot be resolved on a motion to dismiss. *See e.g. Clark v. Hanley*, 89 F.4th 78, 94 (2d Cir. 2023) (such issues are "premature for resolution on a Rule 12(b)(6) motion, before a plaintiff can develop the factual record.")

Defendants nevertheless try to salvage the district court's decision with four meritless arguments.

*First*, they raise a new argument for the first time on appeal. They claim Maddix failed to plausibly allege the materiality of the *Brady* material because he failed to detail the substance of DeJesus's trial testimony and other trial evidence to allow the court to make a materiality assessment. But by failing to advance this argument in the court below, the Defendants waived it. More importantly, Maddix's First Amended Complaint ("FAC") and the Kings County District Attorney's ("KCDAO") Respondent's Brief on Maddix's state appeal —which was

referenced in the FAC, integral to it, and attached to the City's motion to dismiss, A-266-279— recount DeJesus's trial testimony and the other trial evidence, and plausibly demonstrate the materiality of the *Brady/Giglio* material. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (in deciding a motion to dismiss, the court may consider a document "integral" to the complaint, where the complaint "relies heavily upon its terms and effect[.]")

*Second*, Defendants argue there is no *Heck* non-custody exception and, even if there is, Maddix does not qualify for it. But this argument conflicts with Second Circuit law recognizing the exception. *See e.g. Teichmann v. New York*, 769 F.3d 821, 829-30 (2d Cir. 2014) (Calabresi, J., concurring) ("The law in this Circuit …holds —whether correctly or not— that *Heck* does not bar § 1983 claims when habeas is unavailable, at least so long as the unavailability was not intentionally caused by the plaintiff.")

Relatedly, Defendants' argument that Maddix's 1999 habeas proceeding bars him from invoking the *Heck* non-custody exception is waived as Defendants never raised this argument below. Moreover, Defendants' perverse argument is meritless as *their* suppression and misrepresentations prevented Maddix from raising the *Brady/Giglio* claims in his 1999 habeas proceeding, and the very purpose of the non-custody exception is to provide plaintiffs with a federal venue for challenging constitutional violations they were precluded from challenging,

through no fault of their own, in a federal habeas corpus proceeding. Maddix cannot be barred because he suffered the very injury entitling plaintiffs to invoke the *Heck* non-custody exception.

*Third*, Defendants argue it was unreasonable for "Maddix to continue relying blindly" on the KCDAO's pre-2000 representations after 2013, when the DA's office itself supposedly began admitting at least some of these representations were unreliable. City Brief at p. 46 (citing news coverage of DA Hynes' election loss and Maddix's allegations regarding Hynes' misconduct in office). In truth, the KCDAO never admitted any of its representations to Maddix were false, there is no evidence that Maddix was even aware of this media coverage, and there is nothing in the coverage putting Maddix on notice that his trial and appellate prosecutors suppressed *Brady/Giglio* material and deceived every court that reviewed his case. Maddix was not required to assume those prosecutors lied to him. *See e.g. Su v. Filion*, 335 F.3d 119, 128 (2d Cir. 2003) ("[I]t would be an unreasonable application of federal law, as determined by the Supreme Court, to fault [a state prisoner] for not proceeding … on the assumption that the prosecutor is a liar.")

*Finally*, Marriott argues Maddix failed to plausibly allege their hotel managers were *Monell* policymakers, and that they engaged in a civil conspiracy. But Marriott's argument cherry picks Maddix's allegations, recasts them in the

light most favorable to Marriott, and fails to draw plausible inferences in Maddix favor as required under the applicable standard of review.

The district court's judgment should be vacated, and Maddix's case remanded for further proceedings.

## POINT I

### DEFENDANTS WAIVED THEIR ARGUMENT THAT MADDIX FAILED TO PLEAD FACTS FROM WHICH THE MATERIALITY OF DEJESUS'S TRIAL TESTIMONY COULD BE ASSESSED AND, IN ANY EVENT, MADDIX'S COMPLAINT AND MATERIAL INTEGRAL TO THE COMPLAINT DETAILED THE TRIAL EVIDENCE AND ESTABLISHED THE MATERIALITY OF THE *BRADY* MATERIAL

Defendants argue Maddix failed to plausibly allege the materiality of the *Brady* material because his FAC did not detail DeJesus's trial testimony so that the court could assess its importance in the context of the other trial evidence. City Brief at p. 15; Marriott Brief at pp. 33-34. Defendants' argument fails for three reasons.

*First*, Defendants waived this argument by failing to raise it below. "Defendants did not raise this argument before the district court in their motions to dismiss, and it is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 168 n. 2 (2d Cir. 2025) (cleaned up). Defendants *never* argued in the district court that Maddix failed to plausibly allege *Brady* materiality, or that

his allegations in that regard were deficient. *Id.* ("Because Defendants could have raised this argument below and have not explained their failure to do so, we will not consider it for the first time on appeal.")

Of course, this Court may affirm on any ground with support in the record, including grounds upon which the district court did not rely. But "this Court's usual practice [is] to allow the district court to address arguments in the first instance[.]" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 97 (2d Cir. 2015) (citation omitted); *see also Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 208 (2d Cir. 2003) (same). This Court has thus declined to reach the merits of a motion to dismiss for failure to state a claim where, as here, the appellee advanced an alternative argument as a ground for affirming dismissal. *See e.g. Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012) ("Because the district court did not consider these arguments in the first instance, we remand to the district court to determine whether dismissal is appropriate on any of these alternate grounds."); *New York, by James v. Niagara-Wheatfield Cent. Sch. Dist.*, 119 F.4th 270, 284 (2d Cir. 2024) (same).

Moreover, it would be highly prejudicial to Maddix to consider Defendants' new argument here as Maddix never had an opportunity to address it by moving to amend his complaint to cure any alleged deficiency. Maddix had no notice of any issue regarding the sufficiency of his materiality allegations. The district court

offered Maddix an opportunity to amend his complaint to address "the issues raised in Defendants' pre-motion letters," A-6 at 7/24/2025 Entry, and had Maddix been aware of Defendants' new argument, he could have amended his FAC to moot it. Thus, it would be unfair to allow Defendants to ambush Maddix with this new argument on appeal.

*Second*, Defendants' argument is meritless. Maddix's FAC, independently or with the KCDAO's Respondent's Brief on Maddix's state appeal —referenced in the FAC, A-29 at ¶¶ 86-87, integral to it, and filed with the district court as an exhibit to the City's motion to dismiss, A-266-279— contextualizes DeJesus's testimony in light of the trial evidence, and demonstrates the plausibility of Maddix's allegation that the undisclosed evidence was material under *Brady*. *See Chambers v. Time Warner, Inc.*, 282 F.3d at 153 (in deciding a motion to dismiss, the court may consider documents integral to the complaint); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (same) (cleaned up).

Maddix's FAC, in detailing Defendants' misconduct following his conviction, recounted how the KCDAO misled the Appellate Division with its Respondent's Brief "recount[ing] DeJesus's coerced trial testimony implicating Maddix and omitt[ing] any reference to how DeJesus's testimony was obtained." A-29 at ¶¶ 86-88. The City's Rule 12 (b)(6) motion included the brief's statement of facts as an exhibit, A-263-279, and sought to have the district court take judicial

notice of it, which the district court was required to do under Fed.R.Evid. 201 (c)(2). The City's motion to dismiss repeatedly cited to the brief's statement of facts in furtherance of its arguments, EDNY Doc. 30 at pp. 3-4, 17, 19, and Marriott joined in those arguments. SA-44. The brief's statement of facts was thus integral to the FAC.

Together, the FAC and the statement of facts demonstrate the materiality of the *Brady* material. Evidence is material under *Brady* "if there is a reasonable probability" that the suppression affected the verdict. *Kyles v. Whitley,* 514 U.S. 419, 433 (1995). The question is "whether in … absence [of the suppressed evidence the defendant] *received a fair trial*, understood as a trial resulting in a verdict worthy of confidence[.]" *Id.* at 434 (emphasis added). "The standard is satisfied when the prosecution's suppression undermines the court's confidence in the outcome of the trial." *Id.*

Critically, this "does not mean that the defendant would more likely than not have received a different verdict with the evidence[,]" *Smith v. Cain,* 565 U.S. 73, 75–76 (2012) (emphasis added), and a defendant satisfies this standard "even if … the undisclosed information may not have affected the jury's verdict." *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016) (*per curium*).[3] Finally, in making this

[3] Thus, contrary to Marriott's repeatedly assertions, Marriott Brief at pp. 15, 34-36, Maddix is not required to allege the *Brady* material would have resulted in a different verdict.

assessment, the court must consider how the suppressed evidence might have benefitted the defense. *Fuentes v. Griffin*, 829 F.3d 233, 249 (2d Cir. 2016) (granting habeas relief where state court failed to consider "how the [*Brady* material] might have benefited the defense[,]" or evaluate "the potential impact of the evidence on the witness's credibility[.]")

As set forth in the FAC, Maddix's conviction stemmed from a shootout by at least two groups of men in front of a building in Brooklyn. A. 17 ¶ 20. One man was shot and killed, while Larry Blutcher, who would later testify at Maddix's trial, was shot but survived. A-17 at ¶ 20. Maddix was acquitted of the murder but convicted of criminal possession of a weapon in the second degree. A-28 at ¶ 78 and n. 12. At the time, to be convicted of criminal possession of a weapon in the second degree, the prosecution was required to prove Maddix possessed "a machine-gun or *loaded* firearm with intent to use the same unlawfully against another." P.L. 265.03 (McKinney's 1994) (emphasis added).

The prosecution's only identifying witnesses were Blutcher and DeJesus. A-27 at ¶ 70. Blutcher testified that after hearing gunfire, he was swept off his feet and found himself lying on his back gasping for air. A-273. He did not see who shot him. A-275. After hearing additional gunfire, Blutcher saw Maddix leaning over him holding a gun in his right hand. A-274. Because there were at least two groups of shooters, Blutcher's testimony could not establish Maddix shot him or

even that the gun he allegedly saw Maddix holding was loaded and operable. Nor could Blutcher's testimony discount the possibility that Maddix, after hearing the second round of gunfire and seeing Blutcher on the ground, brandished a gun for his own protection. Blutcher also had a horrendous criminal history and outstanding warrants for narcotics possession that called his credibility into question. A-27 at ¶ 70.

Thus, DeJesus became the prosecution's star witness, A-27, and provided the key evidence against Maddix. DeJesus testified that he heard gunshots and saw Maddix standing on the corner firing a gun, A-274, establishing the gun was both loaded and operable. DeJesus claimed he had seen Maddix dozens of times in the neighborhood, A-274, and that after firing the gun, Maddix ran right past him, within five feet, and they looked at each other as Maddix ran by. *Id*.

Had Maddix known DeJesus was secretly coerced into giving this damning testimony and secretly promised he would be released from custody if he did, Maddix could have had DeJesus's testimony precluded on legal coercion and abuse of process grounds, effectively nullifying the prosecution's entire case. A-26 at ¶ 62 and n, 9; *People v. Russ,* 79 N.Y.2d 173, 177-78 (1992) (excluding legally coerced testimony); *People v. Arocho*, 85 Misc.2d 116, 118 (Sup. Ct. New York Co. 1976) (suppressing statements taken during illegal DA office subpoena interviews).

Even if DeJesus' testimony was not precluded, the *Brady* material would have decimated the prosecution's case in front of the jury. Even without that material, Maddix was acquitted of murder (likely because the prosecution could not establish Maddix fired the fatal gunshot). Because DeJesus provided *the only evidence* of the gun being loaded and operable, the jury's assessment of his credibility was necessarily determinative of the case against Maddix.

Revealing DeJesus's illegal incarceration and coercion, his false testimony about his pre-trial meeting with the prosecutor, the secret promise the prosecutor made to him, and the prosecutor's false summation claiming DeJesus had no motive to lie and "nothing at stake," would have severely undermined both DeJesus and the prosecutor's credibility by demonstrating they were liars. *Glossip v. Oklahoma*, 604 U.S. 226, 228 (2025) ("Because [witness'] testimony was the only direct evidence of … guilt, the jury's assessment of [the witness'] credibility was material and necessarily determinative. Correcting [his] lie would have undermined his credibility and revealed his willingness to lie under oath."); *Jenkins v. Artuz,* 294 F.3d 284, 297 (2d Cir. 2002) ("Unless the jury believed [the witness], it could not have found [defendant] guilty of the weapons possession charge. The prejudice flowing from [the witness'] false testimony and the prosecutorial conduct that enhanced his credibility tainted the testimony that was

central to the weapons possession charge.”). Thus, contrary to Defendants' argument, Maddix plausibly alleged the materiality of the *Brady/Giglio* material.

*Third*, even if there was some deficiency in Maddix pleading materiality, he should be afforded an opportunity to amend his complaint. *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (leave to amend should be freely granted where justice so requires”) (citation modified). As discussed above, Defendants never raised its deficiency argument below. Maddix never had notice of the need to address this alleged deficiency, which he could have easily done by amending his complaint.

## POINT II

### DEFENDANTS IGNORE FACTUAL ISSUES PRECLUDING RESOLUTION OF THEIR *HECK v. HUMPHREY* AND STATUTE OF LIMITATIONS DEFENSES

Maddix's opening brief demonstrated the KCDAO suppressed *Brady/Giglio* material and knowingly used false or misleading evidence and argument at his trial. It details how the KCDAO, in violation of its continuing obligation to disclose the *Brady* material it suppressed from him during trial, *Steidl v. Fermon*, 494 F.3d 623, 630 (7th Cir. 2007), deceived Maddix and every court to review his conviction. Maddix alleges he relied on the prosecution's representations regarding the non-existence of *Brady/Giglio* material, and that Defendants'

suppression, lies, and coverup precluded him from discovering his injuries until December 2024. Maddix's Brief at pp. 21-24, 48-49.

These allegations, which must be accepted as true, raise key factual questions regarding Maddix's entitlement to equitable estoppel[4] and the diligence-discovery rule to overcome Defendants' *Heck* and statute of limitations defenses. *See e.g. Kosakow v. New Rochelle Radiology Assocs*., P.C., 274 F.3d at 725 ("Whether equitable estoppel applies in a given case is ultimately a question of fact,"); *Kronisch v. United States*, 150 F.3d 112, 125 (2d Cir. 1998) (whether a plaintiff should have been able, through the exercise of reasonable diligence, to discover his injuries under the diligence-discovery rule is a question of fact).

Such issues cannot be resolved on a motion to dismiss. *Cf. Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 142 (2d Cir. 2025) (As "equitable tolling often raises fact-specific issues premature for resolution on a Rule 12(b)(6) motion, before a plaintiff can develop the factual record ... it is generally improper to dismiss a complaint as untimely"), *cert. denied,* 146 S. Ct. 1501 (2026); *Goldman*

---

[4] Because this is an equitable estoppel claim under a federal statute, federal law applies. *Kosakow v. New Rochelle Radiology Assocs.,* P.C., 274 F.3d 706, 725 (2d Cir. 2001), citing *Wall v. Constr. & Gen. Laborers' Union, Local 230,* 224 F.3d 168, 175–76 (2d Cir. 2000). This Court has used federal "equitable estoppel" to mean estoppel that bars a party from pursuing a defense, *see e.g. Kosakow v. New Rochelle Radiology Assocs., P.C.,* 274 F.3d at 725, one of the estoppels Maddix asserted. *See e.g.* A-34 at ¶ 116 (FAC alleging "equitable estoppel, fraudulent concealment, fraud on the court, and unclean hands doctrines" bar Defendants' *Heck* and statute of limitation defenses); *cf. Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir. 2002) (describing taxonomic confusion of estoppel terms).

*v. Bequai*, 19 F.3d 666, 673 (D.C. Cir. 1994) (material question of fact regarding equitable estoppel precluded summary judgment); *id.* at 674 ("District Court erred in ignoring these fact-bound issues in reaching its conclusion that Goldman's suit was time-barred under the discovery rule.")

This rule has been consistently applied by New York district courts. *See e.g. Music Royalty Consulting, Inc. v. Reservoir Media Mgmt., Inc.*, 2019 WL 6335261, at *9 (S.D.N.Y. Oct. 31, 2019) (McMahon, J.) ("Since whether equitable estoppel applies in a given case is, ultimately, a question of fact, Defendant cannot obtain dismissal of the claims") (citation omitted); *Tardd v. Brookhaven Nat. Lab'y*, 407 F.Supp.2d 404, 417 (E.D.N.Y. 2006) (Spatt, J.) ("Whether or not [equitable estoppel] should be available … in this case cannot be determined without a more fully developed record."); *Bensky v. Indyke*, 743 F. Supp.3d 586, 602 (S.D.N.Y. 2024) (Subramanian, J.) (equitable defenses such as equitable estoppel under New York law are "inherently fact-bound and are rarely fit for a motion to dismiss").[5]

---

[5] Marriott argues Maddix abandoned his equitable estoppel argument as to Marriott. Marriott Brief at p. 47. Not true. Maddix asserted estoppel to bar *all Defendants* from raising their *Heck* and statute of limitations defenses. *See e.g.* Maddix's Brief at 45, 56 ("For the same reasons discussed above ... *Defendants'* misconduct and 30-year coverup equitably estop them from raising any statute of limitation defense with respect to the accrual or timeliness of Maddix's lawsuit.") (Emphasis added); *id* at 48 ("*Defendants* ... are equitably estopped from invoking the *Heck* defense.") (Emphasis added).

The City, however, pivots and argues equitable estoppel under *New York law* requires later acts of deception separate from the ones for which the plaintiff sues. City Brief at p. 46. But federal equitable estoppel controls here, Maddix's Brief at pp. 45-46, and contains no such requirement. Moreover, even if New York law applied, Maddix would meet this additional requirement.

Defendants' post-conviction coverup is separate and distinct from their due process violations during Maddix's trial. *See e.g. Jackson v. City of Cleveland*, 64 F.4th 736, 748 (6th Cir. 2023) ("A post-conviction petition for relief is different in kind from a damages claim, even if they are derived from the same *Brady* violations."), *reh'g denied*, 2023 WL 3806460 (6th Cir. May 10, 2023).

Further, where there is a duty to disclose, as here, *Steidl v. Fermon*, 494 F.3d at 630, a defendant's silence is sufficient even absent subsequent acts of deception. *See e.g. Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 90 (2d Cir. 2013) (Where a defendant has a duty to speak and fails to do so, a plaintiff's reliance on a defendant's silence can provide grounds for equitable tolling); *Indoafric Exports Priv. Co. v. Citibank, N.A.*, 696 F.App'x 551 (2d Cir. 2017) (summary order) (same).

In sum, at least seven factual issues must be resolved before equitable estoppel, the diligence-discovery rule, and Defendants' affirmative defenses can be assessed:

(1) Are Defendants equitably estopped from invoking the *Heck* defense?

(2) Are Defendants equitably estopped from invoking the statute of limitations defense?

(3) As Maddix relied on his trial prosecutor and appellate prosecutors' representations throughout his trial and appeals that no *Brady/Giglio* material existed, did newspaper articles 20 years later, reporting on a pattern of misconduct in the DA's Office require Maddix to assume his trial and appellate prosecutors were lying, and trigger Maddix's duty to inquire under the diligence-discovery rule?

(4) Assuming Maddix's duty to inquire under the diligence-discovery rule was triggered, exactly *when* was it triggered and *what* did it require of him under the facts of his case?

(5) Assuming Maddix's duty to inquire was triggered, what, if anything, would a diligent investigation have revealed?

(6) Considering the prosecutors' 30-year coverup, would the agency that provided the researcher with the *Brady/Giglio* material during his work on an "unrelated wrongful conviction case," have necessarily provided that same material to Maddix if he made a records request?

(7) Is Maddix's lawsuit timely under diligence-discovery rule?

Finally, Defendants do not meaningfully engage Maddix's argument that *Heck*, as the majority of circuits hold, "may be waived or forfeited." *Hebrard v. Nofziger*, 90 F.4th at 1006. As the Fifth Circuit explained:

> "*Heck* discussed the scope of § 1983 claims, not subject matter jurisdiction. It based its holding on the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments, and analyzed when and how a § 1983 cause of action accrues. By its own language,

> therefore, *Heck* implicates a plaintiff's ability to state a claim, not whether the court has jurisdiction over that claim.

*Colvin v. LeBlanc*, 2 F.4th 494, 498–99 (5th Cir. 2021) (citation omitted); *Greathouse v. Meddaugh*, 2023 WL 5439456, at *3 (2d Cir. 2023) (summary order) ("In this case, we assume without deciding that the *procedural bar* [of *Heck*] *is waivable*[.]") (Emphasis added).[6]

Like any other affirmative defense, *Heck* is subject to waiver, *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 863 (7th Cir. 2004), forfeiture, *Hebrard v. Nofziger*, 90 F.4th at 1022 (Sung, J. Dissenting) (forfeiture), and equitable estoppel.

### A. Defendants' Waived Their Meritless Claim That Maddix's 1999 Habeas Proceeding, Where Defendants Precluded Him From Raising His *Brady/Giglio* Claims, Precludes Him From Invoking The *Heck* Non-Custody Exception

Contrary to Defendants' argument, this Court and the majority of circuits recognize the *Heck* non-custody exception. *See* Maddix's Brief at pp. 49-54; *Teichmann v. New York*, 769 F.3d at 829-30 (Calabresi, J., concurring) ("The law in this Circuit …holds —whether correctly or not— that *Heck* does not bar § 1983 claims when habeas is unavailable, at least so long as the unavailability was not

---

[6] The Supreme Court has yet to opine on the issue, *see Muhammad v. Close*, 540 U.S. 749, 752 n. 2 (2004) ("Members of the Court have expressed the view that unavailability of habeas for other reasons may also dispense with the *Heck* requirement. ... This case is no occasion to settle the issue."), and in March of this year, declined the opportunity to do so. *See Wilson v. Midland County*, 146 S.Ct. 1858 (2026) (denying *certiorari* in a case squarely presenting the issue).

intentionally caused by the plaintiff .”); *Wiggins v. Mellia*, 2023 WL 6222303, at *2 (2d Cir. Sept. 26, 2023) (summary order) (“There is … a narrow exception to the *Heck* bar that permits a § 1983 suit where federal habeas relief is unavailable.”).

This Court is bound by the decisions cited by Judge Calabresi in *Teichmann*. *See e.g. Garcia Pinach v. Bondi*, 147 F.4th 117, 129 (2d Cir. 2025) (“Our Court is bound by the decisions of prior panels until such time as they are overruled either by an *en banc* panel of this Court or by the Supreme Court.”).

Defendants’ fallback position is a new argument they raise for the first time on appeal. They argue, with no supporting authority, that Maddix does not qualify for the *Heck* non-exception because Maddix was able to challenge *his conviction* in his 1999 habeas proceeding. City Brief at pp. 35-38; Marriott Brief at pp. 38-40. This argument fails for three reasons.

*First*, Defendants waived this argument by failing to raise it in the district court. *See* pp. 6-7, *supra*.

*Second*, the whole point of the *Heck* non-custody exception is to provide plaintiffs with a federal venue for challenging constitutional violations they were unable to challenge, through no fault of their own, in a federal habeas corpus proceeding. *See e.g. Teichmann v New York*, 769 F.3d at (Calabresi, J., concurring) (“The animating rationale ... was stated to be that some federal

remedy—either habeas corpus or § 1983—must be available to redress constitutional violations") (citation modified); *Poventud v. City of New York*, 750 F.3d 121, 163 (2d Cir. 2014) (*en banc*) (Jacobs, J., dissenting) ("The motivating concern [on which the non-custody exception is based] was that circumstances beyond the control of a criminal defendant might deprive him of the opportunity to challenge a federal constitutional violation *in federal court*.") (Emphasis added); *Jenkins v. Haubert*, 179 F.3d 19, 26 (2d Cir. 1999) ("[F]ive [Supreme Court] justices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be.").

The key inquiry then is whether the § 1983 action, through no fault of the plaintiff, is the only *federal forum* available for the plaintiff to obtain *federal review* of the constitutional violations in his case, not whether the plaintiff had a chance to attack his conviction in general on other grounds. Here, due to Defendants' misconduct, Maddix's 1999 habeas proceeding never provided him with an opportunity to raise his *Brady/Giglio* claims, and that proceeding thus does not impact his entitlement to invoke the *Heck* non-custody exception.

*Third*, the notion that Maddix's 1999 habeas proceeding, where Defendants precluded him from raising his *Brady/Giglio* claims, somehow disqualifies him from invoking the *Heck* non-custody exemption offends the most basic principles of fairness. "It is, as Justice Cardozo stated long ago, a fundamental and

unquestioned principle of our jurisprudence that no one shall be permitted to ... take advantage of his own wrong." *Corniel-Rodriguez v. Immigr. & Naturalization Serv*., 532 F.2d 301, 302 (2d Cir. 1976) (citation modified), *quoting R. H. Stearns Co. v. United States*, 291 U.S. 54, 61-62 (1934).

The KCDAO's suppression throughout Maddix's 1999 habeas proceeding of their coercion of DeJesus, their secret promise to him, and their submission of the misleading trial transcript to the district court, was akin to fraud on the court. *See e.g. Douglas v. Workman*, 560 F.3d 1156, 1193 (10th Cir. 2009) (prosecutor's conduct in affirmatively concealing his tacit agreement with the state's key witness until it was too late, procedurally, for the defendant to use that undisclosed agreement to challenge his capital conviction "was akin to fraud on federal courts[.]") It would be a perverse to penalize Maddix —who was victimized, wrongfully convicted, and lost 19 years of his life in prison— because Defendants' covert misconduct corrupted his 1999 habeas proceeding and precluded federal review of his *Brady/Giglio* claims.

It would mean a plaintiff who diligently pursued federal habeas relief but was barred from raising his constitutional claims due to <u>intentional</u> governmental misconduct, A-68 at ¶¶ 263-266, would be forever barred from all *federal review* of his constitutional claims, exactly what the *Heck* non-custody exception was created to prevent. It would also mean the entities responsible for this injustice

would escape all liability and essentially be rewarded for their successful deception. There is no basis in law for such an unjust result. Accordingly, Maddix's 1999 habeas proceeding does not prevent him from invoking the *Heck* non-custody exception.

### B. Maddix Was Not Required To Exhaust State Remedies Prior To Bringing His §1983 Action

There is no merit to Marriott's half-hearted, legally unsupported argument that Maddix was required to exhaust state remedies prior to bringing his 1983 action. Marriott Brief at p. 16. "[T]he Supreme Court has consistently held that courts should not impose an exhaustion requirement on § 1983." *Jenkins v. Herbert*, 179 F.3d 19, 22 (2d Cir. 1999,) *quoting Patsy v. Florida Bd. of Regents*, 457 U.S. 496, 502 (1982); *Leather v. Eyck*, 180 F.3d 420, 423 (2d Cir. 1999) (the Court, after noting the plaintiff elected not to appeal his State conviction, went on to uphold his right to pursue money damages under § 1983). Indeed, *Wiggins v. Mellia*, 2023 WL 6222303 (2d Cir. Sept. 26, 2023) (summary order), recognized that it is a plaintiff's inability to seek "federal habeas relief"—not state court relief—that "is the focus of the [non-custody] exception to *Heck*."

Moreover, as Maddix explained in his opening brief, requiring victimized plaintiffs like Maddix to exhaust state remedies prior to bringing a § 1983 action could, contrary to the purpose of the *Heck* non-custody exception, *actually bar federal review* under various preclusion doctrines. Maddix Brief at p. 56.

### C. Media Coverage Of The KCDAO's Misconduct, 20 Years After Maddix Was Convicted, Does Nullify His Entitlement To The Diligence-Discovery Rule

The first time Maddix learned of the *Brady/Giglio* material in his case was December 18, 2024, when a researcher working on an unrelated wrongful conviction case alerted him to it. A-31 at ¶ 103. Prior to that date, "Maddix did not know or have any reason to know of the *Brady/Giglio* violations in his case, or the KCDAO's black sites. To the contrary, [the prosecutor's] representations throughout Maddix's trial and the KCDAO's representations afterward misled Maddix to believe no such impeachment material existed, and [that] DeJesus had no undisclosed motive for testifying." A-31 at ¶¶ 104-106.

Yet the City argues it was unreasonable for "Maddix to continue relying blindly on the KCDAO's pre-2000 representations even after 2013, when the DA's office itself began admitting at least some of these representations were unreliable." City Brief at p. 46 (citing news coverage of DA Hynes' election loss and Maddix's allegations regarding Hynes' misconduct in office). This argument fails for three reasons.

*First*, the KCDAO never admitted any of its representations in Maddix's case were unreliable, there is no evidence that Maddix was ever aware of the news coverage on the KCDAO, and, in any event, there is nothing in the materials Defendants cite that gave Maddix any basis to believe such misconduct took place

*in his case*. *See e.g. Pipitone v. City of New York*, 57 F Supp.3d 173, 189 (E.D.N.Y. 2014) (Glasser, J.) ("There was thus no basis in the newspaper articles for the … plaintiffs to suspect that there might be a causal connection between the City and the murders or that they should protect themselves against that eventuality by seeking legal advice."). Maddix was not required to assume simply because other prosecutors in the KCDAO committed misconduct, that *his* prosecutor lied to *him* and suppressed unspecified *Brady/Giglio* material. This is especially so given Maddix's allegation in the FAC that the prosecutor's "representations throughout … trial and the KCDAO's representations afterward misled Maddix to believe no such impeachment material existed, and [DeJesus] had no undisclosed motive for testifying." A-31 at ¶ 104.

*Second,* assuming *arguendo* the materials triggered Maddix's duty to inquire, it is sheer conjecture to assume an investigation by Maddix or even an attorney —if Maddix could even afford one, A-341 n.8— would have yielded the same results as the investigation by the researcher "working on an unrelated wrongful conviction case." A-31 at ¶ 103.[7] The record is silent as to what led to the disclosure —it could have been by a fluke— and there is no basis to assume, as a matter of law, that the agency that produced the records would respond to a

---

[7] "Once a duty to inquire is established, the plaintiff is charged with the knowledge of what he or she would have uncovered through a reasonably diligent investigation." *McIntyre v. United States,* 367 F.3d 38, 52 (1st Cir. 2004).

record request by *Maddix, in his own case*, in the same way it responded to the researcher's request. This is especially so given the extent to which the KCDAO went to conceal DeJesus' incarceration and coercion in the first place.

## POINT III

### MADDIX PLAUSIBLY ALLEGES MARRIOTT POLICYMAKERS ENGAGED IN A CIVIL CONSPIRACY WITH THE CITY TO DEPRIVE HIM OF *BRADY* AND *GIGLIO* MATERIAL, AND TO COVERUP THAT MISCONDUCT[8]

Marriott raises three meritless arguments in its attempt to avoid liability for facilitating the KCDAO's illegal Hotel Custody Program.

*First*, Marriott argues Maddix failed to plausibly allege its local hotel managers, who coordinated with the KCDAO's Relocation Supervisor and facilitated the systematic incarceration of witnesses, were policymakers. But in the Second Circuit, an individual has final policymaking authority "if his decisions, at the time they are made, for practical or legal reasons constitute the [entity's] final decisions." *Roe v. City of Waterbury*, 542 F.3d 31, 38 (2d Cir. 2008).

In accordance with this authority, Maddix alleged Marriott wholly delegated final policymaking authority to the local managers, and they "were autonomous

[8] Marriott repeatedly asserts, with no factual basis, that Maddix's allegations were based on three other civil cases, Marriott Brief at p. 7. In truth, Maddix's allegations are based on a good faith investigation and a host of documentation supporting his claims. The three lawsuits merely provide additional support for the plausibility of Maddix's allegations.

and their decisions on the assistance provided … to the KCDAO went unreviewed and were never overruled[.]" A-76 at ¶ 297.

Courts have held, at this early stage of the litigation, that a plaintiff's allegation that an entity delegated all final authority to a subordinate and the subordinate's actions thus constitute entity policy, "sufficiently alleges *Monell* liability on the basis that Defendant ... was delegated final policymaking authority." *Stalter v. County of Orange*, 2016 WL 8711397, at *11 (S.D.N.Y. Aug. 5, 2016) (Roman, J.).

A plaintiff does not have to make a heightened, particularized evidentiary showing establishing final policymaker status. Fed.R.Civ.P. 8 requires only a plausible allegation that the relevant official possessed final policymaking authority with respect to the challenged conduct, a pleading standard Maddix amply satisfied.

*Second*, Marriott argues Maddix failed to plausibly allege a civil conspiracy. In doing so, Marriott cherry picks Maddix's allegations, recasts them in the light most favorable to itself, and characterizes its actions as innocent ones (simply renting hotel rooms and complying with the KCDAO's requests regarding rooms).

But those characterizations fail to view the facts in the light most favorable to Maddix as required on a motion to dismiss, and disregard the import of the incriminating facts alleged in the FAC. Maddix alleges Marriott managers:

(1) Knew they were contracting with the KCDAO, which prosecuted crimes in Brooklyn, New York, that the KCDAO was confining witnesses in the LaGuardia Marriott, and thus that the witnesses in the hotel were likely connected to the KCDAO's criminal cases, A-77 at ¶ 299;

(2) Had both "actual and constructive notice" of the nature of the witnesses' involuntary confinements by virtue of their *communications with the KCDAO's Witness Relocation Unit Supervisor*, observing shackled prisoners being escorted in and out of hotel rooms, and damage to hotel doors caused by those shackles, A-77 at ¶ 304;

(3) Instead of using witnesses' real names, assigned the witnesses "Custody Numbers," used by the KCDAO, and used those "Custody Numbers" to track the witnesses' hotel rooms and to keep their identities secret, A-77 at ¶¶ 301-302;

(4) Rather than passively rent rooms, the managers "took affirmative steps to ensure that the witnesses, in accordance with the KCDAO's wishes, had no way to complain or alert anyone of their confinement and that the KCDAO's conduct would remain secret[,]" by, for example, ensuring the witnesses could not contact anyone to challenge their confinement A-78 at ¶ 306.

(5) Approved custody records *in Maddix's case* demonstrating they were fully aware *they were confining DeJesus as a material witness against Maddix*. A-181, A-184; Maddix's Brief at pp. 18-20.[9]

---

[9] Marriott argues DeJesus' custody reservation request form and room reservation letter are contained in an earlier section of the FAC, A-25 at ¶¶ 53-54, 57, and there is no allegation that Marriott participated in creating or approving those documents. In truth, Maddix incorporated those paragraphs in his causes of action against Marriott, A-76 at ¶ 296, and alleged Marriott policymakers "participated in creating and approving the administrative paperwork to facilitate" the Hotel Custody Program. A-77 at 300.

Marriott, sophisticated corporate entities that obviously had access to counsel to determine whether their actions and these confinements were lawful, cannot now feign ignorance of this illegal conduct. This is particularly so considering the "Hotel Custody Log," suggesting Marriott's facilitation of the Hotel Custody Program was extensive. *See* A-354-355; Maddix Brief at p. 17.

*Finally*, Marriott repeatedly claims it did not personally suppress any *Brady/Giglio* material from Maddix. But Marriott conveniently overlooks that it is liable for its coconspirator's suppression of *Brady/Giglio* material and post-conviction coverup, as they were reasonably foreseeable acts in furtherance of the civil conspiracy Marriott joined to coverup DeJesus' illegal imprisonment. *See e.g. Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002) (explaining in a § 1983 case that "[a]s a conspirator, the citizen is liable, in civil as in criminal law, for the wrongful acts of the other conspirators committed within the scope of the conspiracy") (citations omitted); *O'Hara v. City of New York*, 568 F. Supp.3d 241, 253 (E.D.N.Y. 2021) (Glasser, J.) (fact that defendant "may not have been directly involved in the solicitation or use of the fabricated testimony … is irrelevant to his liability for that act.").

"[T]here is no requirement that each member of a conspiracy conspire directly with every other member of it, or be aware of all acts committed in furtherance of the conspiracy, or even know every other member." *United States v.*

*Rooney*, 866 F.2d 28, 32 (2d Cir. 1989) (citation omitted). Marriott "need not have known the identities of each and every other member, nor need [to] have been apprised of all of their activities." *Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 78 (2d Cir. 2023).

Moreover, coconspirators' goals "need not be congruent for a single conspiracy to exist, so long as their goals are not at cross-purposes." *United States v. Khalupsky*, 5 F.4th 279, 289 (2d Cir. 2021). Even if "there occur other illegal acts not specifically contemplated by an individual conspirator but reasonably akin to the anticipated illegality and in furtherance or in consequence of the scheme, the conspirator may not on that account escape liability for participation in the conspiracy." *United States v. Gleason*, 616 F.2d 2, 16-17 (2d Cir 1979).

Thus, Marriott is chargeable with the City's suppression of *Brady/Giglio* material and its subsequent coverup, as those acts were in furtherance of, and indeed <u>one of the goals</u>, of the conspiracy Marriott joined to, among other things, coverup DeJesus' illegal incarceration. A-80 at ¶ 319.

## CONCLUSION

The district court's dismissal of Maddix's § 1983 action should be reversed.

Dated: August 25, 2026
New York, New York

Andrew M. Stengel
The Law Firm of Andrew M. Stengel, P.C.
11 Broadway Suite 715
New York, New York 10004
Tel: 212-634-9222
Fax: 212-634-9223
Email: andrew@stengellaw.com

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 6,912 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.